**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 22, Respondent.**

No. 84–1430.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1984.

Decided Nov. 28, 1984.

Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

David D. Weinberg, Washington, D.C., for respondent.

Before HEANEY, ROSS and BRIGHT, Circuit Judges.

PER CURIAM.

The National Labor Relations Board (Board) petitions for enforcement of an order, 268 NLRB 111 (1983), finding that the International Brotherhood of Electrical Workers, Local Union No. 22 (Union) violated section 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3), by failing to execute a written contract incorporating terms allegedly agreed upon by the Union and Electronic Sound, Inc. (Company). The Board ordered the Union to execute a contract and to give the contract retroactive effect until expiration or disapproval by the International Brotherhood of Electrical Workers (International).

The Union argues that the order should be set aside because it is unsupported by substantial evidence. Specifically, the Union contends that the Board, which adopted the findings of an administrative law judge (ALJ), erred in concluding that (1) on June 24, 1982, the Union and the Company reached an agreement; (2) the Company did not engage in further negotiations on June 26; (3) approval by the International was a condition subsequent to the contract; and (4) Company misconduct did not taint the bargaining process. For the reasons discussed below, we enforce the Board's order.

**BACKGROUND**

The Company is a corporation engaged in the installation of communications systems. Since approximately 1966, the Union has represented the Company's employees in collective bargaining agreements. This dispute arises out of 1982 contract negotiations.

On May 25, June 16 and June 21 of 1982, Earl Oliver, the Union's business represent-

ative, and Daniel Van Roy, the Company's owner, met to discuss the terms of a contract to replace the expiring 1979 contract. Van Roy sought significant concessions, which the Union rejected. On June 24 Oliver met with six or seven employees to discuss the status of the negotiations. After rejecting the Company's terms, the employees proposed new terms. In the presence of the employees, Oliver telephoned Van Roy to present the proposal. Van Roy agreed to the terms with the exception of one and presented a counter proposal. Oliver informed Van Roy that after he discussed the proposal with the employees, he would contact Van Roy. About thirty minutes later Oliver telephoned Van Roy. After further bargaining, Oliver, while Van Roy was on the telephone, polled the employees as to each term. The employees unanimously agreed to each term. The evidence is conflicting as to what Oliver then told Van Roy. Oliver testified that he informed Van Roy that the employees agreed to the terms; Oliver denied stating that the Union agreed to the terms. However, Van Roy testified that Oliver stated, "It looks like we have a contract. No, we do have a contract." Three employees who were present during the telephone conversation corroborated Van Roy's testimony.

In late June, Oliver informed the employees that he would not execute a contract incorporating the terms of the June 24 discussion. By letter of June 30, Oliver requested further negotiations with Van Roy. Although Oliver testified that Van Roy agreed to negotiate, Van Roy testified that he informed Oliver that he refused to enter further negotiations because an agreement had already been reached. On July 9, Company counsel mailed Oliver a letter, enclosing a written contract incorporating the terms of the June 24 discussion and requested that Oliver execute the contract. On July 19, Oliver responded by requesting further negotiations. Oliver stated that Union had not reached agreement on June 24 and that the tendered

contract did not accurately reflect certain provisions. On July 26, the parties and their counsel met. The Union sought to negotiate, but the Company refused, stating that it believed an agreement had already been reached. The Company offered to modify the contract language to reflect the agreement reached on June 24. The Union refused.

## ANALYSIS

### A. *Existence of an Agreement*

■ The Union argues that an agreement was not reached on June 24 because Oliver did not expressly inform Van Roy that the Union assented to the terms. The Union contends that Oliver did convey the employees' assent, but that, as the authorized union agent, only Oliver, not the employees, had the authority to enter into binding agreements.[1]

"Whether or not an agreement has been reached between two parties is a question of fact for the Board to determine[.]" *NLRB v. Truckdrivers, Local 100*, 532 F.2d 569, 571 (6th Cir.), *cert. denied*, 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137 (1976). Courts must " 'uphold factual findings of the Board which are supported by substantial evidence on the record as a whole.' " *Id.* (Citation omitted). Furthermore, it "is well established that technical rules of contract do not control whether a collective bargaining agreement has been reached." *Pepsi-Cola Bottling Co. v. NLRB*, 659 F.2d 87, 89 (8th Cir.1981). Rather, the crucial inquiry is whether there "is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Capitol-Husting Co., Inc.. v. NLRB*, 671 F.2d 237, 243 (7th Cir.1982). We find that the Board correctly found that on June 24 Oliver expressed sufficient assent to bind the Union. As noted by the ALJ, Oliver did not express any reservations regarding the terms nor did he attempt to disassociate himself or the Union from the employees' expression of assent. Furthermore, as an alternative holding, the ALJ credited Van Roy's testimony that Oli-

1. The Union did not require employee ratification of agreements. In the past Oliver negotiated binding agreements without submitting the agreements to the membership.

ver stated that "we," (the Union and the Company) had a contract. A fact-finder's credibility determinations should not be reversed absent extraordinary circumstances. *Keokuk Gas Service Co. v. NLRB*, 580 F.2d 328, 334 (8th Cir.1978). This is not such a case. Van Roy's testimony was corroborated by three employees.

## B. *Subsequent Meeting*

■ The Union next argues that even if an agreement had been reached on June 24, the Company waived its right to enforce that agreement by engaging in further negotiations on July 26. The Board correctly rejected this contention. The record is clear that at all times the Company refused to negotiate because it believed it had a contract. The Company met with the Union on the 26th in an attempt to reduce the oral agreement to writing.[2]

## C. *Approval of the Contract by the International*

■ The Union argues that before any agreement can become effective it must be approved by the International. The International constitution provides that all local agreements be submitted to the International for approval and that any agreement not approved is void. International constitution, Art. XVII, Section 7. The Board found that while the language of the constitution created a condition precedent to the formation of a valid contract, that language could not bind the Company unless the Company had notice of the provision. The Board credited the testimony of Van Roy that he had no knowledge of the provision. Furthermore, the Board found that a past contract had been applied as of its effective date prior to International approval. The Board found that, in contrast to the language in the constitution, the "subject to [International] approval" language which appeared on past contracts and on the proposed contract created a condition subsequent, *i.e.*, the contract would be effective until the International disapproved.

We find that the Board correctly concluded that approval by the International was not a prerequisite for the Union to enter into a binding agreement. *See NLRB v. Truckdrivers*, 532 F.2d at 571 (court enforced Board order finding that union constitution insufficient to put company on notice of ratification provision); *NLRB v. International Union of Elevator Constructors, Local 8*, 465 F.2d 974, 975 n. 1 (9th Cir. 1972) (union cannot assert ratification requirements that are inconsistent with past practices).

## D. *Alleged Employer Misconduct*

■ The Union contends that the bargaining process was tainted because Van Roy allegedly threatened employees with economic reprisals and because a supervisory employee, Loren Reining, participated in the employee ratification vote. We agree with the Board that it is unnecessary to address these allegations. Throughout this action, the Union has contended that the employee vote could not bind the Union and that only Oliver had authority to bind the Union. Therefore, because employee ratification was unnecessary, any alleged taint from Van Roy or Reining was irrelevant.

Accordingly, we enforce the Board's order.

---

2. The Union argues that because the Company continued to deduct pension payments contrary to terms of the alleged agreement, the Company also did not believe an agreement had been reached on June 24. However, Van Roy testified the payments were mistakenly deducted.