772 F.2d 421
 120 L.R.R.M. (BNA) 2288, 103 Lab.Cas. P 11,598
 UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL NO. 304A,
UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL
UNION, AFL-CIO, CLC, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 84-2347.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1985.
Decided Aug. 30, 1985.
 
 J. Peter Dowd, Chicago, Ill., for petitioner.
 Kathleen Murray, NLRB, Washington, D.C., for respondent.
 Before BRIGHT, Senior Circuit Judge, and ROSS and JOHN R. GIBSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 Petitioner, United Food and Commercial Workers Union, Local No. 304A, United Food and Commercial Workers International Union, AFL-CIO, CLC (Union) seeks a review of a final decision and order of the National Labor Relations Board (Board). The Board affirmed the administrative law judge's (ALJ) rulings, findings, and conclusions, but modified his recommended order.
 
 
 2
 After a careful review of the record, we find that there is substantial evidence on the record as a whole to support the Board's order.
 
 I. Background
 
 3
 Luther Manor Nursing Home (Employer) operates a nursing home in South Dakota. On January 2, 1980, the Board certified the Union as the exclusive collective bargaining representative for a unit of the employees consisting of all full-time and regular part-time licensed practical nurses and service and maintenance employees. During negotiations from January to June 1980, the Union and Employer exchanged written proposals for an agreement, but many areas remained in dispute. In August the Union's attorney Dowd met with the Employer's representative Tate. Dowd and Tate met in November and then, for the last time on December 15. After a full day of bargaining most issues except those concerning wages, health insurance, and paid lunches and dinners had apparently been resolved. Late in the afternoon Tate made a final offer as to those three areas, with the understanding that the Union would take the final economic offer back to the unit employees and advise Tate of the vote. A day (or two) later the employees voted to accept the economic package.
 
 
 4
 Thereafter Dowd drafted a proposed contract which he thought reflected the understanding of the parties as to the substantive issues. Dowd sent it to Tate on January 5, 1981. Tate reviewed the draft and noted that it differed in several respects from his understanding of what they had agreed to. On January 12, 1981, Tate wrote to Dowd to that effect and he offered to meet with Dowd to conclude negotiations. Dowd wrote back requesting that Tate specify which portions he objected to. On February 9, 1981, Tate wrote back, named the proposed provisions that he took issue with, and requested a date to conclude the matter. No further negotiations or correspondence took place. On March 11, 1981, the Union filed the unfair labor practice charge that gave rise to this case. The complaint alleged that the employer:
 
 
 5
 violated Section 8(a)(1), (3) and (5) of the Act by granting wage increases to newly hired employees while denying similar wage increases to older employees for discriminatory reasons; withdrawing from agreements previously reached with the Union in contract negotiations in areas of wages, health insurance, hours of work and overtime, holidays, vacations, sick leave, funeral leave, time off for union activities, coverage and supervisors; unilaterally withholding annual wage increases of employees hired before January 1, 1981 in disregard of its pre-existing policy; unilaterally increasing the starting wage rates of new employees; unilaterally withholding wage increase adjustments from employees not covered by government wage regulations in disregard of its preexisting policy; unilaterally increasing the cost of health insurance premiums; unilaterally implementing new policies regarding sick leave and absenteeism of employees; unilaterally increasing wages of employees hired since January 1, 1981; unilaterally reclassifying its licensed practical nurses ostensibly as supervisors thereby attempting to exclude them from the collective bargaining unit; and failing and refusing to execute a fully agreed upon collective bargaining agreement.
 
 
 6
 In its answer the employer denied the commission of any unfair labor practices.
 
 
 7
 The case was tried before an ALJ on June 10, 11, and 21, 1982, in Sioux Falls. The ALJ found in favor of the Union on some issues and in favor of the Employer on others. The ALJ concluded that the Employer had violated the Act:
 
 
 8
 1. By withdrawing the wage proposal previously offered for all unit employees and later restricting said offer to full-time employees only, Respondent violated Section 8(a)(1) and (5) of the Act.
 
 
 9
 2. By unilaterally withholding wage increase adjustments from employees not covered by government wage regulations in disregard of pre-existing policy Respondent violated Section 8(a)(1) and (5) of the Act and by undertaking such action because it was at the time engaged in collective bargaining, Respondent violated Section 8(a)(1) and (3) of the Act.
 
 
 10
 3. By unilaterally granting wage increases the Respondent violated Section 8(a)(1) and (5) and by falsely blaming the Union for the delay in granting such increases, Respondent violated Section 8(a)(1) and (3).
 
 
 11
 4. By unilaterally changing its sick leave and absenteeism policy Respondent violated Section 8(a)(1) and (5) of the Act.
 
 
 12
 5. By unilaterally reclassifying LPN employees to supervisory positions Respondent violated Section 8(a)(1) and (5) of the Act.
 
 
 13
 The Union's other allegations were dismissed. The ALJ's decision and order were then appealed to the Board.
 
 
 14
 A three-member panel of the Board considered the ALJ's decision. The Board affirmed the violations as found by the ALJ and agreed with the ALJ that the remaining allegations should be dismissed. The Board dismissed the complaint allegation that the Employer unlawfully refused to execute an agreed-upon contract with the Union, finding that the parties failed to reach a meeting of the minds as to all substantive issues so that no final agreement had been reached. The Board did modify the order of the ALJ to include a narrow cease-and-desist order to conform to the law and to the violations found. This appeal followed. The Union challenges the dismissal as contrary to the evidence, and argues that the Board's order does not adequately remedy the violations found.
 
 II. Appellate Review of a Board Order
 
 15
 The role of the court of appeals in reviewing a decision of the Board is to determine whether the Board's order is supported by substantial evidence on the record as a whole or whether the Board had misapplied the law. Inter-Collegiate Press, Graphic Arts Division v. NLRB, 486 F.2d 837, 840 (8th Cir.1973), cert. denied, 416 U.S. 938, 94 S.Ct. 1939, 40 L.Ed.2d 288 (1974).
 
 
 16
 Where the NLRB has acted within its power, held a hearing comporting with procedural due process, made findings based on substantial evidence and provided an appropriate remedy, it becomes the duty of the federal circuit courts of appeals, in accordance with the express requirement of Congress, to grant enforcement of the NLRB order. NLRB v. Bradford Dyeing Association, 310 U.S. 318, 342, 60 S.Ct. 918, 930, 84 L.Ed. 1226 (1940).
 
 
 17
 As we said in Royal Typewriter Co. v. NLRB, 533 F.2d 1030, 1035 (8th Cir.1976),
 
 
 18
 Our review under Section 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. Sec. 160(e) and (f), is circumscribed by the direction that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. Sec. 160(e). See Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 464, 95 L.Ed. 456, 467 (1951). The remedy selected by the Board may be set aside "only upon a showing of abuse of its broad discretion in its field of specialization." NLRB v. Drapery Manufacturing Co., 425 F.2d 1026, 1029 (8th Cir.1970), and its order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Id. at 1028, quoting Virginia Electric & Power Co. v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568, 1574 (1943).
 
 
 19
 This court has uniformly adhered to this standard of review. See, e.g., DeQueen General Hospital v. NLRB, 744 F.2d 612 (8th Cir.1984) and NLRB v. Vincent Brass & Aluminum Co., 731 F.2d 564 (8th Cir.1984).
 
 
 20
 The scope of appellate review in this kind of case is limited. The Board may exercise "a large measure of informed discretion and a court must accept its determination so long as they have warrant in the record and a reasonable basis in law." Nabisco, Inc. v. NLRB, 738 F.2d 955, 957 (8th Cir.1984), quoting NLRB v. Chem Fab Corp., 691 F.2d 1252, 1256 (8th Cir.1982). We now consider whether the Board's order is supported by substantial evidence on the record as a whole.
 
 III. Dismissal of Certain Alleged Violations
 
 21
 The Union contends that the evidence establishes that Tate agreed in substance to an entire contract when he submitted his last and final offer on December 15 and that a complete package was accepted and ratified by the employees a day or two later. The Union argues that the parties contemplated only language revision in the future. The Union asserts that it is significant that no further negotiations were scheduled at the conclusion of the December 15 meeting. The Union views the subsequent correspondence as Tate's attempt to renege on items previously agreed to. The Union also takes the position that ratification by the Union constituted acceptance of a complete agreement.
 
 
 22
 The Board dismissed the portion of the complaint alleging that the Employer violated the Act by refusing to execute a fully agreed-upon collective bargaining agreement. The Board determined that the requisite meeting of the minds as to all substantive issues had not occurred and that the parties did not reach final agreement on December 15. The Board contends that the record establishes that there were four substantive areas (wage increases, health insurance, holiday pay, and time off for union activities) in which the parties had not reached a meeting of the minds, regardless of each party's mistaken belief that the other party had acceded to its proposals.
 
 
 23
 The ALJ in his decision relied in part on the absence of agreement on certain language as a basis for concluding that the parties never reached final agreement. The Board stated in a footnote to its order that to the extent the ALJ's discussion implies that a writing is a prerequisite to a final agreement, the panel did not accept it. The duty to bargain includes the obligation to assist in reducing an oral agreement to writing. Georgia Kraft Co., 258 N.L.R.B. 908, 912 (1981), 696 F.2d 931 (11th Cir.1983). But that obligation arises only after a meeting of the minds has occurred in terms of the expression of agreement by both parties as to all the substantive issues. Liberty Pavilion Nursing Home, 259 N.L.R.B. 1249, 1251 (1982). The Board has no authority to order a party to execute a contract to which it has not assented. H.K. Porter Co. v. NLRB, 397 U.S. 99, 108, 90 S.Ct. 821, 826, 25 L.Ed.2d 146 (1970).
 
 
 24
 The existence or nonexistence of agreement is a question of fact for the Board to determine. NLRB v. IBEW, Local No. 22, 748 F.2d 348, 350 (8th Cir.1984). Here the Board found that the parties' disagreement went beyond a language dispute. Rather it involved the substance of certain contract terms. Thus the Board found that the requisite assent did not occur.
 
 
 25
 The Board modified the recommended order of the ALJ to include a narrow cease-and-desist order to conform to the law and the violations found. We believe the substantial evidence on the record as a whole supports the Board's findings and its cease-and-desist order.
 
 
 26
 We now consider whether the Board abused its discretion in selecting the remedy.
 
 IV. Remedy Order
 
 27
 The Union alleged in its complaint that the Employer violated the Act by granting wage increases to newly hired employees on or about January 1, 1981. The Employer admitted that it granted wage increases on January 1 to the minimum wage but not for reasons violative of the Act. In August 1981, the Employer granted a 30 cent wage increase to those hired before January 1, 1981 and a 5 cent increase to new employees. These increases had the effect of reducing the pay differential between the two groups. The Board found the August increases to be unilateral and violative of the Act, but that they were intended to make up for the failure to grant wage increases in January 1981.
 
 
 28
 The Union argues that the intent of the unilateral wage increases was to divide the senior and new employees and create conflicts. The Union maintains that the only appropriate remedy to these violations is an order requiring the Employer make employees whole by granting to employees all the wage increases given unilaterally to some employees to discourage protected activities.
 
 
 29
 The Board's order directed the Employer to make whole the employees who were unlawfully denied increases in January 1981, but does not order the Employer to restore the wage differential. The Board contends that the fact that in some situations some employees may no longer be earning the same percent more than their fellow employees does not compel the Board to order restoration of the wage differential. According to the Board, in terms of real earnings, the order places the employees in the same position they would have been in but for the Employer's unlawful conduct.
 
 
 30
 It is for the Board, not courts, to determine how the effect of prior unfair labor practices may be expunged, and where findings of unfair labor practices by an employer are supported by substantial evidence on the whole record, the Board must be given broad authority to restore the status quo ante and to make whole any losses suffered by employees because of unfair labor practices. Hinson v. NLRB, 428 F.2d 133, 136 (8th Cir.1970).
 
 
 31
 The National Labor Relations Board's power to fashion remedies places a premium upon agency expertise and experience, and broad discretion involved is for the agency and not the reviewing court to exercise. Amalgamated Clothing Workers v. NLRB, 371 F.2d 740, 746 (D.C.Cir.1966). We cannot say that the traditional relief provided here will be so ineffective to enforce the policies of the Act as to be insufficient as a matter of law.
 
 
 32
 The National Labor Relations Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts. DeQueen, supra, 744 F.2d at 619, quoting NLRB v. Gissel, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969). The Board possesses broad discretion to fashion appropriate remedies once the unfair labor practice is established, and the authority of the court of appeals to review remedial provisions of the Board's order is limited. NLRB v. J.S. Alberici Construction Co., 591 F.2d 463, 468 (8th Cir.1979). A court may not ordinarily modify a remedy ordered by the Board, because "Congress has invested the Board, not the courts, with * * * discretion to * * * [fashion remedies that] 'will effectuate the policies of [the Act].' " NLRB v. Food Store Employees Union, Local 347, 417 U.S. 1, 8, 94 S.Ct. 2074, 2079, 40 L.Ed.2d 612 (1974), (quoting 29 U.S.C. Sec. 160(c)). We conclude the Board did not abuse its discretion in the selection of the remedy.
 
 
 33
 Because we find substantial evidence on the record as a whole supporting the Board's order, that order is hereby affirmed.