**TOCCO DIVISION OF PARK–OHIO INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 81–1541.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1982.

Decided March 15, 1983.

George F. Lynch (argued), Kenneth Stark, Squire, Sanders & Dempsey, Cleveland, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Helen Morgan (argued), Washington, D.C., for respondent.

Eugene Green, Cleveland, Ohio, David Roloff, Leonard Page, Asst. Gen. Counsel, Intern. Union, UAW, Detroit, Mich. (argued), for interveners.

Before MERRITT and CONTIE, Circuit Judges, and WEICK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Tocco Division of Park-Ohio Industries, Inc. (Tocco) has petitioned for review of, and the National Labor Relations Board (Board) has cross-applied for enforcement of, a Board decision and order which found that Tocco violated section 8(a)(5) of the National Labor Relations Act (Act) by refusing to bargain with its employees' labor union over a work relocation plan. On appeal, Tocco argues both that work relocation was not a mandatory subject of bargaining and that even were the plan a mandatory subject, the union waived its right to bargain. Since the former claim was not raised before the Board and since Tocco could have presented the issue at that time, we consider only the latter argument. *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 311, 312 n. 10, 99 S.Ct. 1123, 1129, 1130 n. 10, 59 L.Ed.2d 333 (1979); *NLRB v. Allied Products Corp.,* 548 F.2d 644, 653–54 (6th Cir.1977).

## I.

Tocco designs, builds and sells induction heating equipment. Prior to 1976, it manufactured all of its products at a unionized plant in Cleveland, Ohio. The union, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) has represented Tocco's Cleveland employees for over thirty-five years. In 1975–76, Tocco built a second non-union plant in Boaz, Alabama, which was designed to house operations similar to those of the Cleveland facility. While Tocco intended to use the capacity of both plants to manufacture induction heating equipment, subsequent unfavorable economic conditions forced the company to alter its plans.

Problems first arose in July, 1976 when Tocco unilaterally transferred certain equipment and transformer work from Cleveland to Boaz. Seven Cleveland employees were laid off. After the union responded by filing an unfair labor practice charge under section 8(a)(5) of the Act, the Board's general counsel issued a complaint. In mid-December, 1976, Tocco and the UAW began negotiating a new collective bargaining agreement to replace the one due to expire in January, 1977. During these negotiations, the Board on March 21, 1977 approved a settlement of the unfair

labor practice charge. Although Tocco admitted no violation, it promised not to transfer machines or work from the Cleveland plant without bargaining with the union.

Also during the contractual negotiations, however, Tocco nine times submitted to the UAW a written statement which asserted that the former recognized no restriction on its freedom "to decide what is made where by whom" and which invited the union to make every proposal which would limit Tocco's freedom "to transfer work or operations or equipment or the manufacture or assembly of products or components...." The UAW made no such proposals. On January 14, 1977, it did submit a severance pay proposal under which employees terminated for company reasons would receive forty hours of pay for each year of company service.

The union struck Tocco from January 21, 1977 to July 11, 1977, when a new contract was executed. This agreement contained a new severance pay provision in the supplemental unemployment benefits section. The provision, which covered Park-Ohio employees in both the Tocco and Camshaft and Crankshaft Divisions, stated in essence that employees terminated because of plant closures or operational transfers would receive severance pay in an amount equal to the lesser of $3,000 or the employee's weekly straight-time pay multiplied by the number of full years of unbroken accumulated seniority.

On August 25, 1977, Tocco informed the union that all oscillators, transformers and their components would be manufactured in Boaz primarily because of lower production costs. This action did not cause Cleveland layoffs and the union did not object. In 1978, Tocco transferred its six-spindle lathe and certain other operations to Boaz. Again, no Cleveland jobs were lost and the union did not object.

On January 30, 1979, Tocco announced the transfer, for economic reasons, of its

water system, work station, control station, TOCCOtrol and electrical control panel operations to Boaz. Although the union requested a meeting about the matter, no meeting could be held until March 1st because of schedule conflicts between management and union representatives. By that date, four employees had already been laid off. At the meeting, the union both objected to the work transfers and asserted that Tocco should have bargained before implementing changes. Tocco responded that its right to transfer work had been recognized during the previous contractual negotiations. The company eventually laid off twenty-three Cleveland employees. The UAW filed the unfair labor practice charge in question under section 8(a)(5) of the Act on March 21, 1979.

## II.

Tocco asserts that the UAW waived its right to bargain[1] over proposed work transfers in the language of the collective bargaining agreement, in negotiations preceding the contract and by acquiescing in work transfers occurring after execution of the contract. Both this court and the Board have previously held that a waiver of section 8(a)(5) rights must be "clear and unmistakable." *NLRB v. Pepsi-Cola Distributing Co.*, 646 F.2d 1173 (6th Cir.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *Beacon Journal Publishing Co. v. NLRB*, 401 F.2d 366 (6th Cir.1968); *C & C Plywood*, 148 NLRB 414, 416 (1964). The Board has been somewhat inconsistent, however, when delineating what evidence may establish a clear and unmistakable waiver. In *McDonnell-Douglas Corp.*, 224 NLRB 881, 895 (1976), the Board held:

> Whether there has been such a "clear and unmistakable" relinquishment of a right is determined on the basis of the contractual language as well as the facts and circumstances surrounding the making of the contract.

1. Since the question of whether transferring work or equipment is a mandatory subject of bargaining is not before the court, we assume

without deciding that Tocco possessed a statutory duty to bargain in this case.

Under this test, the Board and the courts may infer from the contract and from extrinsic evidence of surrounding circumstances that a party to a collective bargaining agreement has waived its right to bargain.

The Board used a slightly different test in *American Cyanamid Co.,* 246 NLRB 87 (1979), which concerned a union's right to engage in sympathy strikes. The Board held that absent express contractual provisions indicating a waiver of the union's rights, "*unequivocal* bargaining history evidencing an intent to waive the right" (emphasis supplied) would be required before a waiver would be found. *Id.* Though similar to the *McDonnell-Douglas* formulation, this standard on its face additionally requires that extrinsic evidence be "unequivocal" or at least very clear before an inference of waiver may be based upon it. *See also Daniel Corp.,* 239 NLRB 1335 (1979).

The Board formulated a significantly different test, however, in *International Union of Operating Engineers, Local Union 18,* 238 NLRB 652 (1978) (hereinafter referred to as *Operating Engineers* ):

> Waiver may be found in express contractual language or in unequivocal extrinsic evidence bearing upon *ambiguous* contractual language. (Emphasis supplied.)

Under this standard, evidence of bargaining history and of the parties' practice under a collective bargaining agreement is only admissible if the contractual language is ambiguous. In contrast, neither the *McDonnell-Douglas* nor the *American Cyanamid* tests for waiver contain any prerequisites for admitting extrinsic evidence. The Board applied the *Operating Engineers* formulation in the present case.

■ This court's review of Board rules formulated in order to promote national labor policy is narrow. We must accept the standard applied by the Board in determining whether the UAW waived its section 8(a)(5) rights if the standard is rational and is consistent with the purposes of the Act. *See Beth Israel Hospital v. NLRB,* 437 U.S. 483, 500–01, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978). If the Board's construction of

the Act is reasonably defensible, that determination should not be overturned simply because this court might prefer another construction. *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). We cannot say that the waiver standard applied in this case is either irrational or inconsistent with the Act's purposes. In fact, the ninth circuit has approved this test. *NLRB v. Southern California Edison Co.,* 646 F.2d 1352, 1364 (9th Cir.1981). Moreover, the Board's opinion in this case clearly shows that the Board evaluated the bargaining history and the parties' practice under the agreement together with the contractual language. Consequently, Tocco cannot claim that the Board refused to consider extrinsic evidence favorable to the company's position.

### III.

■ The Board's application of the waiver test to the facts of this case must be enforced if supported by substantial evidence on the record considered as a whole. *See Beth Israel Hospital,* 437 U.S. at 501, 98 S.Ct. at 2473; *NLRB v. Carbonex Coal Co.,* 679 F.2d 200 (10th Cir.1982). While this court must consider any evidence in the record weighing against such a conclusion, including findings made by the Administrative Law Judge (ALJ), the question remains whether or not substantial evidence supports the Board's decision that the UAW did not waive its section 8(a)(5) rights in this case. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488–92, 71 S.Ct. 456, 464–66, 95 L.Ed. 456 (1951); *NLRB v. Empire Corp.,* 518 F.2d 860, 863 (6th Cir.1975).

■ Tocco first argues that the contractual language itself shows that the UAW waived its right to bargain over work relocations in return for severance pay were Cleveland employees terminated because of such transfers. The mere presence of the severance pay provision does not, of course, compel the conclusion that the union relinquished its bargaining rights. That the parties agreed that Cleveland employees should be compensated because of terminations resulting from work transfers does

not dispose of the underlying question of whether the UAW was entitled to be consulted about the transfer decision itself. The Board has previously held that the presence of a severance pay provision can be consistent with the union's reservation of the right to be consulted about the decision activating the severance pay clause. *See New York Mirror, Div. of Hearst Corp.,* 151 NLRB 834 (1965).

Tocco claims that such a result is not proper in this case because of the following contractual language:

> In the event the company *determines to* ... close or transfer a Tocco-Cleveland department or operation, or a crankshaft or camshaft department or operation, in whole or in part, Severance Allowances will be payable.... (Emphasis supplied).

The company contends that since the phrase "determines to" grants it complete discretion to relocate work as needed, the UAW relinquished its bargaining rights.

Nevertheless, the Board concluded that this language was equivocal when compared to contractual language in other cases in which the Board found a union waiver of section 8(a)(5) rights.[2] Furthermore, the UAW points out in its brief[3] that the severance pay provision is contained in the supplemental unemployment benefits section rather than in the management rights section where a union waiver normally would be located. Finally, Tocco's own personal director, a member of the negotiating team, testified that no contractual provision allowed the company to transfer work. On this record, we cannot say that the Board erred in concluding that the collective bargaining agreement, without more, does not demonstrate the UAW's intent to waive its bargaining rights.

The Board next evaluated the party's contractual relationship in light of extrinsic evidence. Tocco argued before the Board,

for instance, that the pre-agreement negotiations show a union waiver. The governing rule is that the bargaining history establishes a relinquishment of section 8(a)(5) rights on a mandatory subject of bargaining only if:

> It can be said from an evaluation of the prior negotiations that the matter was "fully discussed" or "consciously explored" and that the union "consciously yielded" or clearly and unmistakably waived its interest in the matter.

*C & C Plywood,* 148 NLRB 414, 416 (1964), *affd.,* 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967).

Tocco emphasizes that nine times during the contract negotiations, it informed the union that it recognized no limits on its freedom to relocate work and that if the union wished to restrict this option, the union should propose constraints. Since the UAW did not propose restrictions, but rather requested severance pay for employees terminated because of work transfers, Tocco concludes that the UAW intended during negotiations to trade its bargaining rights for severance pay. In addition, the ALJ found that "the issue of Boaz plant transfers was 'on the table' during the above negotiations and the matter was resolved with full freedom in the company, but with severance pay should layoffs or terminations occur" (App. at 17). Thus the ALJ found a direct quid pro quo which constituted a waiver.

The first problem with this position is that since the UAW had a statutory right to bargain over work transfers, it was not bound to negotiate those rights into the contract. Rather, Tocco had the burden of securing an unambiguous waiver. Moreover, since Tocco did not possess the "rights" it claimed, the UAW had no duty to propose restrictions on those nonexistent "rights." The union's silence in the face of

---

**2.** *See, e.g., Consolidated Foods Corp.,* 183 NLRB 832 (1970) ("the employer shall have the exclusive right to at all times, change, modify, or cease its operations, processes, or production...."); *International Shoe Co.,* 151 NLRB 693 (1965) (the employer retained the "sole"

right to decide who and how many employees to hire and how to sell and distribute the company's product).

**3.** The UAW is an intervenor on this appeal.

Tocco's erroneous legal claims does not constitute a clear and unmistakable waiver.

Secondly, substantial evidence supports the Board's position that the UAW did not intend to trade its section 8(a)(5) rights for severance pay. The union first raised the issue on January 14, 1977. On March 21, 1977, the parties settled the pending unfair labor practice charge with Tocco agreeing to bargain with the UAW before relocating work. That the union extracted such a settlement *after* proposing severance pay is strong evidence that it did not intend severance pay to replace its bargaining rights.

Tocco does highlight one colloquy between the parties' negotiators as evidence of the union's intent to waive its rights. When originally presented with the severance pay proposal, Tocco's representatives asked if the union was referring to work transfers to Boaz. The union responded that Boaz was the only other plant Tocco operated. While this response could be interpreted as an offer by the UAW to relinquish section 8(a)(5) rights, it also can be construed as a proposal concerned only with the effects of work transfers and having nothing to do with whom Tocco had to consult before making transfer decisions. Furthermore, the severance pay plan agreed upon by the parties covered employees in the Camshaft and Crankshaft Division as well as in the Tocco Division. One could infer from this fact that the severance pay plan simply was not linked to the Tocco work relocation problem.[4]

On balance, Tocco at most can establish that the bargaining history taken together with the contractual language admits of conflicting inferences concerning waiver. Under the substantial evidence standard,

this showing would not warrant disturbing the Board's decision. This court must still consider the parties' administration of the contract, however, in order to determine whether all the evidence shows that the UAW acquiesced in Tocco's unilateral work relocation plans.

Tocco contends that the UAW's failure to object to the work transfers which occurred in August, 1977 and in 1978 constituted waiver by acquiescence. Though a union can relinquish its bargaining rights by post-agreement conduct, *see, e.g., American Cyanamid Co.,* 246 NLRB 87, 90 (1979), we agree with the Board that no such waiver occurred here. The critical fact found by the Board is that the UAW objected to the two work relocation decisions which resulted in layoffs of bargaining unit employees, *i.e.,* the July, 1976 and January, 1979 work transfers. That the union withheld objection to transfers not affecting Cleveland jobs does not demonstrate that it waived the right to bargain about transfers affecting the bargaining unit.

Accordingly, having evaluated the contractual language and the extrinsic evidence in light of each other, we hold that the Board's decision is supported by substantial evidence on the record considered as a whole. Since the UAW did not waive its right to bargain about work transfers adversely affecting union employees, the Board's order hereby is ENFORCED.

---

**4.** Two cases cited by Tocco regarding the alleged bargaining history waiver are inapposite. In *McDonnell-Douglas Corp.,* 224 NLRB 881 (1976), the employer informed the union that it interpreted an agreed upon contractual provision as requiring the employees to pay increases in the cost of insurance premiums. In *Speidel Corp.,* 120 NLRB 733 (1958), the employer told the union that the contract language did not obligate the employer to pay Christmas and Easter bonuses. In both cases, the union executed the contract despite the warnings. In

both situations, the Board held that the union had waived the right to bargain about the issues in question.

These decisions are distinguishable because in the present case, Tocco did not inform the union, before the latter executed the agreement, that the company interpreted the final severance pay provision as a waiver of the union's right to bargain about work transfers. Hence the union did not sign the collective bargaining agreement with notice of Tocco's interpretation of the provision.