795 F.2d 150
 122 L.R.R.M. (BNA) 2948, 254 U.S.App.D.C.
105, 55 USLW 2067,
104 Lab.Cas. P 11,901
 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1466,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Columbus and
Southern Ohio Electric Company, Intervenor.
 No. 84-1322.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 17, 1985.
Decided July 8, 1986.
 
 Petition for Review of an Order of the National Labor relations board.
 Peter O. Shinevar, with whom Elliot Bredhoff and Laurence J. Cohen, Washington, D.C., were on brief, for petitioner.
 Lawrence Blatnik, Atty., N.L.Rel.B., with whom Robert E. Allen, Associate Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Lawrence J. Song, Atty., N.L.R.B., Washington, D.C., were on brief, for respondent.
 Guy Farmer, Washington, D.C., for intervenor, Columbus and Southern Ohio Elec. Co.
 Before BORK and SCALIA, Circuit Judges, and MacKINNON, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge BORK.
 BORK, Circuit Judge:
 
 
 1
 Petitioner International Brotherhood of Electrical Workers Local 1466, AFL-CIO ("IBEW" or "the union") appeals a decision by the National Labor Relations Board dismissing the union's complaint that Columbus and Southern Ohio Electric Company ("Columbus" or "the company") committed an unfair labor practice by refusing to bargain over its unilateral termination of the employees' Christmas bonus. We agree with the NLRB's conclusion that the integration sentence of the 1982 collective bargaining agreement eliminated the Christmas bonus as a term or condition of employment. Because the union, for that reason, had no right to bargain over the Christmas bonus when the company announced the discontinuation of the bonus, we affirm the Board's order dismissing the union's complaint.
 
 I.
 
 2
 Approximately forty years ago, Columbus began paying its employees an annual Christmas bonus. The bonus has never been the subject of a collective bargaining agreement between the company and the union. In mid-1982 the company and IBEW renegotiated their collective bargaining agreement. In a letter dated April 19, 1982, the company's representative notified IBEW that, upon the expiration of the current contract, Columbus wished to "terminate all other agreements, written or oral, between the parties, whether such agreements be in the form of letters, memoranda, grievance settlements or in any other form." Joint Appendix ("J.A.") at 162.
 
 
 3
 At the first renegotiation meeting, Columbus proposed a "zipper clause":
 
 
 4
 Section 2. It is the intent of the parties that the provisions of this Agreement will supersede all prior agreements and understandings, oral or written, expressed or implied, between such parties and shall govern their entire relationship and shall be the sole source of all rights or claims which may be asserted in arbitration hereunder or otherwise.
 
 
 5
 The Union for the life of the Agreement hereby waives any rights to negotiate, or to negotiate or bargain with respect to any matters contained in this Agreement.
 
 
 6
 J.A. at 167. By letter of May 7, 1982, the union sought to clarify the scope of the first sentence, asking the company for "a list and summary of all prior agreements and understandings, oral or written, expressed or implied, which the Company believes to have contractual affect [sic] between the parties." Id. at 169. The company answered in a letter of May 14, 1982, that it did not have such a list, and that the number of side agreements made by the parties over the years made it "virtually impossible to draw up an accurate list." Id. at 170. Columbus stated that it sought to terminate all existing agreements in order to "wipe the slate clean before the new contract went into effect." Id. During a contract negotiation meeting on May 19, 1982, the IBEW representative stated that he understood the intent of the zipper clause but indicated the union would complain to the NLRB about the company's refusal to offer a list of the agreements affected. See Columbus & Southern Ohio Electric Co., No. 9-CA-19066 (Sept. 7, 1983), J.A. at 205.
 
 
 7
 IBEW filed an unfair labor practice charge with the Regional Director of the NLRB, claiming that Columbus' failure to provide the requested list of side agreements constituted a breach of the company's duty to bargain. J.A. at 191. The Regional Director refused to issue a complaint on the ground that Columbus could not give IBEW information it did not possess. The Regional Director stated in a letter to the union that the employer sought "to clear the table so that all matters were subject to inclusion within one written agreement." Id. at 192. The union appealed to the General Counsel of the NLRB. IBEW argued that Columbus' position with respect to the zipper clause was broad, even including "past practices" within its scope, and that IBEW was entitled to know "specifically what the Company want[ed] ... removed" in the new contract. Id. at 195-96. But, on July 29, 1982, the appeal was denied. Id. at 200.
 
 
 8
 On August 25, 1982, after twenty-six separate bargaining sessions, Columbus and IBEW reached agreement on a new contract. J.A. at 205. The contract did not mention the Christmas bonus but did contain the zipper clause exactly as it had appeared in Columbus' original proposal. Id. At no time during the negotiations did either party make express reference in the issue of how the contract would affect the Christmas bonus. Id.
 
 
 9
 The company announced on November 23, 1982, that it intended to discontinue the Christmas bonus. J.A. at 205. IBEW filed a grievance on November 29, 1982, protesting the elimination of the bonus. When management did not accept the grievance, the union filed an unfair labor practice charge with the Regional Director of the NLRB, asserting that Columbus had unilaterally altered the Christmas bonus in violation of its statutory duty to bargain over terms and conditions of employment. Id. at 206.
 
 
 10
 Relying on authority that the waiver of statutory rights under the National Labor Relations Act ("NLRA") must be "clear and unmistakable," see J.A. at 208, the ALJ held for the union. The ALJ found that the issue of the Christmas bonus had never arisen during negotiations and that the company had admittedly not contemplated discontinuing the bonus until after the contract was executed. Id. at 210. The zipper clause, he therefore concluded, did not apply to the longstanding "unilateral[ ]" provision of the Christmas bonus, id., and he recommended that the company be ordered to cease and desist and to make the employees whole for the period during which Columbus was in violation of its duty to bargain. Id. at 214.
 
 
 11
 The Board, acting through a three-member panel, reversed the ALJ's decision. See Columbus & Southern Ohio Electric Co., 270 N.L.R.B. 686 (1984). The Board reviewed the "complete contract" and found that the agreement addressed "an entire spectrum of issues," including a large number of specific provisions covering wages and compensation. Id. at 687. This fact, coupled with the sweeping language of the zipper clause itself (e.g., "supersede all prior agreements and understandings," "shall govern the[ ] [parties'] entire relationship," "sole source of any and all rights or claims which may be asserted in arbitration here or otherwise"), led the Board to conclude that the zipper clause constituted a "clear and unmistakable waiver of the Union's right to bargain over the elimination of the Christmas bonus." Id.
 
 II.
 A.
 
 12
 Before we address the Board's holding that the zipper clause constituted an effective waiver of the union's right to bargain about the termination of the Christmas bonus, some statutory background is in order. Section 7 of the National Labor Relations Act guarantees employees the right to "bargain collectively through representatives of their own choosing," see 29 U.S.C. Sec. 157 (1982), and section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of [that] right[ ]." 29 U.S.C. Sec. 158(a)(1) (1958). More directly, section 8(a)(5) of the Act makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. Sec. 158(a)(5) (1982). Section 8(d) of the Act defines this bargaining obligation as requiring the union and employer to "meet ... and confer in good faith with respect to wages, hours, and other terms and conditions of employment." 20 U.S.C. Sec. 158(d) (1982).
 
 
 13
 In NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), the Supreme Court announced that an employer's "unilateral change" in a subject matter within the scope of section 8(d) amounted to "a violation of Sec. 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of Sec. 8(a)(5) much as does a flat refusal [to bargain]." Id. at 743, 82 S.Ct. at 1111 (footnote omitted). Katz dealt with an employer's unilateral changes in the terms and conditions of employment during an ongoing contract negotiation, see id. at 737, 82 S.Ct. at 1108, but it is clear as well that making unilateral changes in the terms and conditions of employment during the pendency of an existing collective bargaining agreement also violates the duty to bargain. See Office & Professional Employees International Union, Local 425 v. NLRB, 419 F.2d 314 (D.C.Cir.1969).
 
 
 14
 An employer's "[p]ast practice" can become "clearly established as a term and condition of employment" subject to the duty to bargain. See 419 F.2d at 321. Specifically, a Christmas bonus, if tied to other remuneration and paid regularly over an extended period, becomes an element of wages and, therefore, a term and condition of employment that cannot be altered unilaterally. See 5 T. Kheel, Labor Law Sec. 19.04, at 19-17 to 19-19 & n. 5 (1984); compare NLRB v. Niles-Bement-Pond Co., 199 F.2d 713, 714 (2d Cir.1952) (upholding a Board finding that a Christmas bonus paid "over a substantial period of time and in amount ... based on the respective wages earned by the recipients" were "wages"), with NLRB v. Nello Pistoresi & Son, Inc., 500 F.2d 399, 400-01 (9th Cir.1974) (approving NLRB's finding that infrequent, sporadic Christmas bonuses unrelated to the size of the employee's salary were not "wages, hours, or other terms and conditions of employment"). In the case before us, no one disputes that the Christmas bonus, a regular practice going back some forty years, constituted a part of the employees' wages and could not have been eliminated unilaterally by Columbus prior to the 1982 collective bargaining agreement. The NLRB concluded, however, that the parties, by that agreement, had effected "a clear and unmistakable waiver of the Union's right to bargain over the elimination of the Christmas bonus." 270 N.L.R.B. at 687; see Road Sprinkler Fitters Local Union No. 669 v. NLRB, 676 F.2d 826, 832 (D.C.Cir.1982) (holding that waiver of statutory rights must be "clear and unmistakable"). We do not need to decide the appropriate degree of deference, if any, to give to the NLRB's interpretation of a contract, for, upon examination of the contract, we find that our interpretation of the agreement is the same as that of the NLRB.
 
 B.
 
 15
 The Board's analysis relied upon the sweeping language of the first part of the zipper clause, the integration sentence, and not upon the second part, the waiver sentence. The Board emphasized the great breadth of the integration sentence stating:
 
 
 16
 An examination of the contract language reveals that the parties clearly agreed that the provisions of the collective-bargaining agreement will "supersede all prior agreements and understandings" and that the collective-bargaining agreement would govern the parties' "entire relationship" and be the "sole source of any and all rights or claims which may be asserted in arbitration hereunder or otherwise." (Emphasis added).
 
 
 17
 270 N.L.R.B. at 687. Then, reasoning that the contract covered "an entire spectrum of issues," including many provisions on "wages" and other "types of compensation," the Board concluded that the zipper clause waived the union's right to bargain over the elimination of the Christmas bonus. Id.
 
 
 18
 The Board's reasoning suggests that the integration sentence of the zipper clause extinguished the practice of giving a Christmas bonus by limiting the union's rights to compensation to those provisions found within the agreement. Because the adoption of the integration sentence "wipe[d] the slate clean," the bonus no longer amounted to a term or condition of employment. Thus, by agreeing to the integration sentence, the union clearly and unmistakably lost any further right to bargain over the elimination of the bonus.
 
 
 19
 In light of the entire record, we believe that the Board correctly read the integration sentence of the agreement. The language of that sentence is both strong and sweeping, and the bargaining history makes it clear that the scope of its coverage is wide. The opening clause states that the collective bargaining agreement would "supersede all prior agreements or understandings, oral or written, express or implied." Given the comprehensive provisions on compensation contained within the agreement, this clause serves to set aside all prior elements of compensation and replace them with the explicit compensation provisions contained in the contract. Thus, if the Christmas bonus clearly amounted to an "agreement[ ] or understanding[ ], oral or written, expressed or implied," the first clause of the integration sentence set it aside in favor of the comprehensive compensation provisions of the new agreement.
 
 
 20
 The bargaining history shows that this was precisely the case. After the company announced its intention to include a comprehensive zipper clause in the new agreement, the union asked for "a list and summary of all prior agreements and understandings, oral or written, expressed or implied, which the Company believes to have contractual affect [sic] between the parties." J.A. at 169. The company refused to provide the list requested, but rather sent a letter clarifying the scope of its proposal. That letter stated in relevant part:
 
 
 21
 [T]o avoid any misunderstanding as to the Company's intention, our letter ... notified you that we wish to terminate all agreements [when the new collective bargaining agreement takes effect].... By specifying "all" agreements, we feel we have made our notice clear and unambiguous. "All" means just that--all. What we have [proposed] ... was to wipe the slate clean before the new contract goes into effect. Of course, both parties are free to make proposals during the present negotiations; and these proposals could, of course, include matters that have been included in a side agreement. Presumably, if the Union wishes to continue an agreement, it knows of the existence of that agreement, as it would have been a party to it.
 
 
 22
 J.A. at 170. Thus, the company viewed its proposal as comprehensive and unambiguously expressed that view to the union prior to any agreement on the proposal. Columbus sought by its inclusion of such a provision to "terminate" every preexisting "agreement[ ] or understanding[ ]" between itself and the union and to "wipe the slate clean" by the adoption of a new agreement. We must conclude, therefore, that the integration sentence terminated the bonus if the practice of paying the bonus amounted to an "agreement[ ] or understanding[ ]" under the company's proposal.
 
 
 23
 The company argues that its proposal did cover "practices" and that the union understood this to be the case during the negotiations leading up to the adoption of the integration sentence of the zipper clause. Brief for Columbus at 18. The bargaining history bears the company out, for it provides a clear and unmistakable indication that the union understood the bonus to be within the category of "agreements or understandings." After receiving the letter described in the previous paragraph, IBEW filed a complaint with the Regional Director of the NLRB requesting that the company be required to provide the desired list, but the complaint was dismissed. The union appealed to the NLRB General Counsel, explaining that it sought to find out which "specific agreements and understandings" were within the proposal and, therefore, wanted the employer to supply "a list of such material ... believed to be of contractual effect." J.A. at 195. In that same notice of appeal, the union described in great detail what it understood that "material" to be, and what Columbus, therefore, proposed to "terminate." Specifically, IBEW stated:
 
 
 24
 The Employer's position is broad. It covers past practices, arbitrators' awards as to the interpretation and scope of contract language, grievance settlement[s] which may bear relevance to the contract language, oral agreement[s] which over the course of years have been perpetuated into practices, and written understanding[s] which also over the course of years have been perpetuated into practices.
 
 
 25
 J.A. at 195-96 (emphasis added). The General Counsel rejected the appeal, but the union still accepted the company's proposed integration sentence, notwithstanding the concededly broad scope of intended coverage. Thus, because the union unambiguously equated "past practices" with "agreements and understandings" and understood the company's proposal, therefore, to sweep in all such practices, IBEW, by agreeing to the company's proposal, accepted the "terminat[ion]" of all such practices, among which the Christmas bonus must plainly be counted.
 
 
 26
 Other parts of the integration sentence independently require the conclusion that the practice of giving a Christmas bonus was terminated. Following the initial clause just analyzed, the integration sentence continues by asserting that the collective bargaining agreement "shall govern [the parties'] entire relationship." This evinces a clear intent to do away with any element of that relationship not found within the four corners of the agreement, and, in the process, eliminates the Christmas bonus, which is nowhere to be found within that agreement. Finally, leaving no doubt about the intention to do away with anything not found within the new agreement, the parties included a clause stating that the contract was to be "the sole source of any and all rights or claims which may be asserted in arbitration ... or otherwise." By their plain terms, therefore, each of the three clauses of the integration sentence is sufficiently broad and comprehensive to have extinguished any right the union had to a Christmas bonus and terminated that bonus. The matter could not have been plainer.
 
 
 27
 The Board, therefore, correctly determined that the employer did not commit an unfair labor practice when the company announced on November 23, 1982, almost three months after the adoption of the new collective bargaining agreement, that the Christmas bonus was being discontinued, even though Columbus afforded the union no prior opportunity to bargain at that time. The Board's analysis might have begun and ended with the observation that "[i]t is the unilateral change in a matter which is a mandatory subject of bargaining that constitutes a violation of the Act," Alfred M. Lewis, Inc. v. NLRB, 587 F.2d 403, 411 (9th Cir.1978) (emphasis added), and that, because the collective bargaining agreement terminated the practice of giving a Christmas bonus, announcing the discontinuation of that bonus did not amount to a change in any such matter. The company merely implemented the change over which it and the union had bargained and to which they agreed in the adoption of the collective bargaining agreement. The Board's opinion, however, speaks of a "waiver" which might make it appear that it rested upon the second sentence of the zipper clause rather than, as we do, the first sentence. We think, however, that this was merely a question of loose usage rather than a different rationale. For that reason, no problem is created by SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").
 
 
 28
 The NLRB said that the "zipper clause agreed to by the parties constituted a clear and unmistakable waiver of the Union's right to bargain over the elimination of the Christmas bonus." 270 N.L.R.B. at 687. But the Board's opinion cannot be taken to rely in any way upon the second sentence of the zipper clause, that which "waives any rights to request to negotiate, or to negotiate or to bargain with respect to any matters contained in the Agreement." Indeed, that waiver, being confined to matters in the agreement, could not apply to the Christmas bonus since the bonus was not in the agreement. The Board's analysis rests entirely on the first, or integration, sentence, and entirely disregards the second, or waiver, sentence. Thus, the Board's analysis cannot be read as depending upon the union's waiving its statutory rights per se, but clearly depends instead upon the union's waiving its right to bargain by agreeing to forgo a necessary predicate to the exercise of that right. Because the effect of this is the same as the waiver of statutory rights, the agreement must meet the statutory standard that waiver be "clear and unmistakable." Road Sprinkler, 672 F.2d at 832. And it does. The union explicitly and unmistakably agreed to eliminate the Christmas bonus as a term or condition of employment when it accepted the integration sentence of the zipper clause and, therefore, lost any bargaining rights regarding its elimination.
 
 
 29
 That the company, by its own admission, did not decide to terminate the bonus until after the execution of the collective bargaining agreement does not alter the analysis. Columbus' express purpose was to rid itself of all obligations outside the contract, including obligations it could not identify or had not thought about. The zipper clause's integration sentence accomplished that. The slate being wiped clean, the company had an option. It could have paid a bonus and, perhaps, put itself on the road to reestablishing the bonus as a term or condition of employment, or it could not pay the bonus. It chose the latter course.
 
 Accordingly, the order of the NLRB is
 
 30
 Affirmed.