**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHALLENGE–COOK BROTHERS OF OHIO, INC., Respondent.**

No. 87–5153.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1988.

Decided March 29, 1988.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Linda J. Dreeben, Marc B. Seidman, Beverly Oyana (argued), Washington, D.C., for petitioner.

George B. Smith (argued), Constangy, Brooks and Smith, Maria N. Sorolis (argued), Atlanta, Ga., for respondent.

Before LIVELY, Chief Judge, and JONES and BOGGS, Circuit Judges.

LIVELY, Chief Judge.

The National Labor Relations Board (the Board) petitions for enforcement of its decision and order, published at 282 NLRB No. 2 (1986), finding Challenge–Cook Brothers of Ohio, Inc. (the employer) in violation of § 8(a)(1) and (5) of the National Labor Relations Act. The Board entered a cease and desist order, and affirmatively required the employer to bargain upon request with the United Steelworkers of America (the union) over the effects on employees of the transfer of work from a plant in Bryan, Ohio to one in Calhoun, Georgia.

Aside from one matter not pursued on appeal, three issues were contested before the Board and this court: (1) whether the phase-out of work at Bryan, Ohio and continuance of the same work at Calhoun, Georgia was a routine reduction in force resulting from a temporary change in production or a permanent transfer of work to a new location; (2) whether the administrative law judge (ALJ) who heard the unfair labor practice charges abused her discretion in denying the employer's motion to reopen the record for the introduction of evidence that was unavailable at the time of the hearing; and (3) whether the union waived its right to require the employer to bargain over the effects of the shift of production from one bargaining unit to another.

I.

Prior to the fall of 1982 the employer manufactured cement mixers and commercial laundry dryers at its Ohio plant. It also manufactured cement mixers at its Georgia plant. In 1979 the Ohio plant employed 450 to 500 production workers. Because of an economic downturn, the number of hourly employees had dwindled by early 1982 to 150 working a four-day week. In September 1982 the employer decided to phase out the manufacture of cement mixers at the Ohio plant and to consolidate all such work at the Georgia plant, which was maintaining a higher volume of new orders for mixers. An officer of the employer advised a representative of the union, which had represented production workers at the Ohio plant since 1974, that the phase-out decision had been made and would result in the layoff of 50 to 60 employees. The union advised the employer that it desired to bargain over the effects of the decision, but the employer denied this request.

The transfer of cement mixer manufacturing to Georgia moved rapidly and was completed in November 1982. At that time the hourly workforce at the Ohio plant was reduced to approximately 32. In connection with the removal, two large pieces of equipment used in manufacturing cement mixers were shipped to the Georgia plant and two salaried employees relocated to Georgia. In addition, the Georgia plant increased its workforce to handle expanded production of cement mixers. The ALJ found that such a shift of resources and activities was unprecedented in the history of the Ohio plant and that the employer "gave no hint of knowing when if ever it might resume cement mixer production at [the Ohio plant]." (Footnote omitted).

## II.

■ The first two issues give us slight pause. The finding by the ALJ, adopted by the Board, that the phase-out and shift of production resulted in a permanent transfer of work to a new location is supported by substantial evidence, and therefore is binding on this court. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Given this finding, unless there was a waiver, the employer's refusal to bargain over the effects of the relocation constituted a violation of a statutory duty. *First National Maintenance Corp. v. N.L.R.B.*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981); *N.L.R.B. v. Production Molded Plastics, Inc.*, 604 F.2d 451 (6th Cir.1979).

■ With respect to the second issue, we conclude that the Board did not abuse its discretion in denying the employer's motion to reopen the record. The evidence that the employer desired to place in the record related to conditions approximately one year after the decision to phase out the Ohio operation and shift production of cement mixers to the Georgia plant. The refusal to bargain occurred in October 1982, when the decision was made. The fact that orders which were received a year later led to some resumption of production at the Ohio plant would not have compelled a different conclusion with respect to the 1982 conduct. The Board acted within its discretion in denying the motion to reopen.

## III.

### A.

The waiver issue requires more extended discussion. The employer contends that by agreeing to inclusion in the collective bargaining agreement of a management rights clause and a "zipper" clause, the union waived its right to require bargaining over the effects of the relocation of work. Pertinent provisions of the management rights clause are set forth:

Section 5—RIGHTS OF MANAGEMENT 5.01. Except as otherwise specifically provided in this Agreement, the Employer has the sole and exclusive right to exercise all the rights or functions of management, and the exercise of any such rights or functions shall not be subject to the grievance or arbitration provisions of this Agreement.

Twenty-six management rights are then listed, including the following:

6. The location of the business, including the establishment of new plants or departments, divisions, or subdivisions thereof, and the relocation, sale, leasing or closing of plants, departments, divisions or subdivisions thereof.

7. The determination of products to be manufactured or services to be rendered.

22. The transfer of work from one job to another, or from one plant to another, or from one department, division or other plant unit to another.

5.02. It is agreed that the enumeration of management prerogatives above shall be deemed to exclude other management prerogatives not specifically enumerated above.

The "zipper" clause provides:

36.01 Neither the Employer nor the Union shall be bound by any requirement which is not specifically stated in this Agreement. Specifically, but not exclusively, neither the Employer nor the Union is bound by any past practice of the Employer, or understandings with any labor organizations, unless such past practices or understandings are specifically stated in this Agreement.

36.02 The Union agrees that this Agreement is intended to cover all matters affecting wages, hours and other terms and conditions of employment and similar or related subjects, and that during the term of this Agreement neither the Employer nor the Union will be required to negotiate on any further matters affecting these or any other subjects not specifically set forth in this Agreement.

### B.

In *Federal Compress & Warehouse Co. v. N.L.R.B.*, 398 F.2d 631, 636 (6th Cir. 1968), this court stated the requirements which must be met in order to find that a

union has waived a collective bargaining right:

> In order to effectuate the relinquishment of a collective bargaining right under the provisions of a collective bargaining agreement, the language must be *clear and unmistakable.* "Silence in the bargaining agreement on such an issue does not meet this test." *Timken Roller Bearing Co. v. N.L.R.B.*, 325 F.2d 746, 751 (6th Cir.) (emphasis added).

The collective bargaining agreement in *Federal Compress* contained a "zip-up" clause, similar in material respects to the one included in the Challenge–Cook agreement. The court held that the failure to mention the issue in dispute specifically in the zip-up clause led to conflicting inferences, and a finding of contractual waiver could not be based on the general terms of that clause. 398 F.2d at 637.

This court has applied the "clear and unmistakable" test consistently. *See N.L.R.B. v. Pepsi–Cola Distributing Co.*, 646 F.2d 1173 (6th Cir.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *Tocco Division of Park–Ohio Industries, Inc. v. N.L.R.B.*, 702 F.2d 624 (6th Cir.1983); *N.L.R.B. v. General Tire & Rubber Co.*, 795 F.2d 585 (6th Cir.1986).

*Tocco* had factual similarities to the present case in that economic conditions led to the unilateral transfer of equipment and work from one plant to another. Two unilateral transfers were involved, the first causing no layoffs and the second causing layoffs of seven union employees at the first plant. The union did not object to the first transfer, but did object to the second one. During negotiations for the agreement then in force, the employer had asserted that there should be no restriction on its freedom "to decide what is made where and by whom" and had invited the union to make every proposal that would limit its right to transfer work operations. The union made none. 702 F.2d at 626.

In *Tocco* the Board found that the union had not waived the right to collective bargaining over the effects of the transfer, and this court enforced the Board's decision. This court reached its conclusion in

two stages. First, it found that the standard applied by the Board for determining whether the union had waived its rights was rational and consistent with the purposes of the Act. The court then determined that the application of the standard to the facts of the case on review was supported by substantial evidence on the record considered as a whole. *Id.* at 627. The court found that the Board had applied a rational standard and that the finding of no waiver was supported by substantial evidence. Specifically, the court found that neither contract language, the union's lack of response to the employer's invitation to designate subjects for further bargaining, nor the union's failure to object to the first unilateral transfer constituted a waiver. *Id.* at 628–29.

■ The management rights clause in the present case gave the employer the right to make unilateral transfers of work from one plant to another and generally to make business decisions about what products would be manufactured and where. However, it was completely silent with respect to the duty to bargain over the *effects* of these decisions. This is a statutory duty that derives from § 8(a)(5), the duty to bargain over "wages, hours, and other conditions of employment," and § 8(d) "the mutual obligation of the employer and representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." *First National Maintenance Corp.*, 452 U.S. at 674–75, 101 S.Ct. at 2578–79; *Pepsi–Cola Distributing Co.*, 646 F.2d at 1175–76. When relying on a claim of waiver of a statutory duty to bargain, an employer has the burden of proving a clear relinquishment; silence in the collective bargaining agreement does not constitute a waiver.

■ Nor do we construe the zipper clause as such a clear relinquishment. The broad language of the zipper clause in the present case refers to "all matters affecting wages, hours, and other terms and conditions of employment," and relieves both parties from further negotiations.

Consistent with past treatment of such general language by this court, we conclude that there was no relinquishment of the right to bargain over the effects of the unilateral acts of the employer. This panel cannot ignore the holding of a previous panel in *Pepsi–Cola Distributing Co.*, and adopt the dissenting opinion.

The petition for enforcement is granted.

BOGGS, Circuit Judge, dissenting.

Because in my view the union waived its right to require Challenge–Cook Brothers to bargain over the effects of the relocation of cement mixer operations from the Bryan, Ohio plant to the Calhoun, Georgia plant, pursuant to the zipper clause in the collective bargaining agreement, I dissent.

In its previous decisions, the Labor Board has not consistently delineated what is needed to establish a "clear and unmistakable" waiver of rights, as our decision in *Tocco Division of Park–Ohio Industries, Inc. v. NLRB*, 702 F.2d 624 (6th Cir.1983), illustrates. I fully agree with the court's opinion that a "clear and unmistakable" waiver is required. *NLRB v. Pepsi–Cola Distributing Co.*, 646 F.2d 1173 (6th Cir.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). However, the Labor Board in this case has not been faithful to the standard we approved in *Tocco*, even though the Board's brief in this case confirmed that the standard applied in this case. This standard recognizes a waiver can exist in the clear language of the contract alone, without resort to extrinsic evidence. *Tocco*, 702 F.2d at 627 (relying on *International Union of Operating Engineers, Local Union 18*, 238 NLRB 652 (1978)). As we said in *Tocco*, "evidence of bargaining history and of the parties' practice under a collective bargaining agreement is only admissible if the contractual language is ambiguous." *Ibid.*

I do not agree that the Board is essentially entitled to ignore the plain language of a broadly worded zipper clause, which evidences the parties' intention to have their agreement contained in the four corners of the collective bargaining agreement. In my view, the zipper clause in this case is broad and comprehensive and effectuates a waiver of "effects" bargaining.

It is important to focus on the precise language of the zipper clause, which says quite clearly that the collective bargaining agreement precludes negotiation on subjects not specifically mentioned therein. The operative language of section 36.02 says that the agreement covers "all matters affecting wages, hours, and other terms, and all conditions of employment and similar or related subjects...." In equally plain language, it states that neither the employer nor the union is required to "negotiate on any further matters affecting these or any of the subjects not specifically set forth in the Agreement." In my view, this broad and comprehensive language shows a "clear and unmistakable" waiver of all subjects not specifically mentioned in the agreement.

Under the Labor Board's approach, an employer that wants the collective bargaining agreement to contain the entire agreement of the parties must specify with exacting detail those issues that have been the subject of bargaining and those that have not been considered. This diminishes the importance of using general language to convey the parties' intent, can lengthen needlessly the bargaining process, and perhaps will lessen the ability of the parties to come to agreement. It seems curious to me that the Board's approach would imply that the broader the language in a zipper clause, the less likely the Board will read it as a waiver of all subjects. A broadly worded zipper clause should be read to allow the employer "to rid itself of all obligations outside of the contract, including obligations it could not identify or had not thought about." *International Brotherhood of Electrical Workers Local 1466, AFL–CIO v. NLRB*, 795 F.2d 150, 156 (D.C. Cir.1986).

This case is similar in many respects to *Electrical Workers*. There, the District of Columbia Circuit affirmed the Labor Board's decision that a zipper clause constituted an effective waiver of the union's right to bargain about the termination of a

Christmas bonus. The zipper clause in that case stated in pertinent part:

> It is the intent of the parties that the provisions of this Agreement will supersede all prior agreements and understandings, oral or written, expressed or implied, between such parties and shall govern their entire relationship and shall be the sole source of all rights or claims which may be asserted in arbitration hereunder or otherwise.

The court found support for its decision in the "strong and sweeping" language of the zipper clause, which "limit[ed] the union's rights to compensation to those provisions found within the agreement." *Id.* at 153. The court said "[t]he union explicitly and unmistakably agreed to eliminate the Christmas bonus as a term or condition of employment when it accepted the integration sentence of the zipper clause and, therefore, lost any bargaining rights regarding its elimination." *Id.* at 156. *See also id.* at 154 (the zipper clause "serves to set aside all prior elements of compensation and replace them with the explicit compensation provisions contained in the contract.").

The court of appeals also relied on the parties' history of bargaining, which did not specifically show that the Christmas bonus or any other issues were to be excluded by the zipper clause. *Id.* at 154. Indeed, the employer refused to discuss any specifics. According to the court, the company viewed its proposal as "comprehensive" and "wip[ing] the slate clean" and "unambiguously expressed that view to the union prior to any agreement on the proposal." *Ibid.*

In our case, of course, we do not have any bargaining history. Unlike the Board in this case, I do not find that to be a fatal flaw. If a zipper clause is worded as broadly as it is in this case, the Board should recognize a waiver without examining bargaining history. This is consistent with the standard approved in *Tocco*. Even if resort is had to bargaining history, I would not find it dispositive unless it provides evidence that the parties intended an issue to be excluded from the zipper clause. Here, there is no such evidence.

The *Electrical Workers* case provides an instance of both the Labor Board and the court of appeals approving a waiver, even though the bargaining history does not indicate the specific subjects to be excluded from the zipper clause. Comparing our case with *Electrical Workers*, it seems clear that the Board is not applying the "clear and unmistakable" waiver rule consistently.

Because the language of section 36.02 of the collective bargaining agreement "could not have been clearer had it been written by Abraham Lincoln and etched in stone," *NLRB v. Pepsi–Cola Distributing Co.*, 646 F.2d 1173, 1176 (6th Cir.1981) (Brown, J., dissenting), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982), I conclude that the union clearly and unmistakably waived its right to "effects" bargaining.