**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**DRAPERY MANUFACTURING CO., Inc.
and American White Goods Com-
pany, Respondents.**

**No. 19680.**

United States Court of Appeals,
Eighth Circuit.

April 22, 1970.

Rehearing Denied May 13, 1970.

Warren M. Davison, Atty., National Labor Relations Board, Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Linda Sher, Atty., N.L.R.B., on the brief.

Jack L. Whitacre, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for respondents; Harry L. Browne, Kansas City, Mo., on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order against the respondent companies. 170 N.L.R.B. No. 199 (1968). Two issues are presented. First, whether the Board may charge the respondents American White Goods Company (hereinafter American) and Drapery Manufacturing Co., Inc. (hereinafter Drapery) with an

8(a) (5) violation of the National Labor Relations Act for refusal to bargain over the decision to close Drapery. Secondly, whether a back pay award may be issued by the Board because of the company's delay in bargaining over the "effects" of closing.

American is a wholesaler of linen supplies and work garments supplied to hospitals and other institutions. In 1962, the Price brothers, owners of American, along with Louis Lesky, acquired stock of Drapery for the purpose of having Drapery do work which had previously been subcontracted to a third party. Over a period of the next few years Drapery suffered increasing losses until it was shut down for economic reasons on April 21, 1967.

In April 1966, Union Local No. 754[1] began organizing the seven employees of Drapery. All the employees signed authorization cards and the union requested recognition. The company did not reply and a protest strike ensued. The employees returned to work the next day, April 20, 1966, but again went out on a protest strike the following day. They returned to work on April 22, 1966, but were then paid off and discharged. The company was then picketed until April 28, 1966, when the employees were reinstated pending a determination by the Board as to whether Drapery was under its jurisdiction. The company promised that if the Board found that Drapery and American were a single integrated employer, and therefore within the jurisdiction of the Board, they would then bargain with the union.

On July 19, 1967, the Board found that Drapery and American were a single integrated employer and that the company had violated 8(a) (5) by refusing to bargain with the union, as well as committing discriminatory conduct constituting violations of 8(a) (1) and (3). 166 N.L.R.B. No. 96 (1967).

However, prior to this finding the company closed down its drapery operation on April 21, 1967. This was done without advance notice and without an offer to bargain with the union over the closing or the effects of the closing. A subsequent hearing resulted and the Trial Examiner, relying upon the Board's earlier ruling, held that the closing of Drapery was a partial closing of the common enterprise. The Examiner found that respondent had violated 8(a) (5) of the Act by failing to bargain with the union over the decision to close, and thereafter, over the effects of that decision. The Board ordered the respondent to make four employees whole for any loss they may have suffered by paying them back pay from the date of the closing to August 1, 1967.[2] The latter date being the time when Drapery offered to bargain over the effects of the closing after the Board's jurisdictional decision of July 1967.

I. *The Refusal to Bargain.*

In NLRB v. Adams Dairy, Inc., 350 F.2d 108 (8 Cir. 1965), cert. denied 382 U.S. 1011, 86 S.Ct. 619, 15 L.Ed.2d 526 (1966), we held that in the absence of union animus, a company has no legal duty to bargain with a union over the decision to partially shut down its operations because of economic reasons. This decision was the result of a remand of our earlier holding, 322 F.2d 553, ordered by the Supreme Court, 379 U.S. 644, 85 S.Ct. 613, 13 L.Ed.2d 550 (1965), in view of the Supreme Court's decision in Fibreboard Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).

The Board urges us to reconsider *Adams Dairy.* It is also argued that *Fibreboard* is directly controlling as to the facts of the instant case. The Board

---

1. Paint, Varnish and Lacquer Makers, Local No. 754, Kansas City, Mo., affiliated with Brotherhood of Painters, Decorators and Paperhangers of America, AFL-CIO.

2. The Board likewise ordered the company to maintain a preferential hiring list in case of reinstatement of the discharged employees.

further relies upon NLRB v. Winn Dixie Stores, Inc., 361 F.2d 512 (5 Cir. 1966), and its own decision in Ozark Trailers, Inc., 161 N.L.R.B. No. 561 (1966).

■ In *Fibreboard* it was held to be an 8(a) (5) violation to refuse to bargain over the subcontracting of company work which had previously been performed by the company employees to a third party. The work itself was still to be performed on Fibreboard's premises. As Judge Vogel observed in the *Adams Dairy* case, there was in *Fibreboard* mere substitution of one set of employees with another. Under these circumstances, the Supreme Court held that "on the facts of this case * * *" there existed a duty to bargain. The instant facts are clearly distinguishable. It is undisputed here that the drapery work was shut down solely because of economic losses which was not the case in *Fibreboard*. In *Fibreboard* the work continued, with no major capital decision taking place. Here, as in *Adams Dairy*, a major shift in capital investment did occur. The machinery of Drapery was dismantled and removed from the premises and the drapery work was no longer controlled in any way by the company. We adhere to the principles set forth in *Adams Dairy*. In accord, see NLRB v. Dixie Ohio Express Co., 409 F.2d 10 (6 Cir. 1969); NLRB v. Thompson Transport Co., 406 F.2d 698 (10 Cir. 1969); NLRB v. Transmarine Navigation Corp., 380 F.2d 933 (9 Cir. 1967); NLRB v. Royal Plating & Polishing Co., 350 F.2d 191 (3 Cir. 1965).

II. *The Back Pay Order.*

The Board ordered the company to issue back pay to the Drapery employees from April 21, 1967, the date of their discharge, to August 1, 1967, the date the company offered to bargain over the effects.

The company does not contest the Board's finding that their refusal to bargain over the effects of closing until August 1, 1967, as distinguished from the closing itself, constituted an unfair labor practice. The Board contends that if the company had immediately bargained over the effects of the closing, that one of the company's concessions might have been to reemploy the seamstresses in the parent plant, American. The Board reasons, therefore, that its back pay award has a reasonable relationship to the company's delay in bargaining over the effects of closing. The company contends, on the other hand, that such an award is speculative and does not effectuate the policies of the Act.

■■ The critical issue on appeal relates to the scope of review by an appellate court over an administrative decision of the Board. It is an established principle that a Board order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Electric & Power Co. v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943). The rationale for the rule is that the Board, as an administrative agency, "must draw on enlightenment gained from experience" in fashioning its remedies, NLRB v. Seven-Up Co., 344 U.S. 344, 73 S.Ct. 287 (1953). As was said in Phelps-Dodge Corp. v. NLRB, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941):

"[I]n the nature of things Congress could not catalogue all the devices and strategems for circumventing the policies of the Act. Nor could it define the whole gamut of remedies to effectuate these policies in an infinite variety of specific situations. Congress met these difficulties by leaving the adaptation of means to end to the empiric process of administration. The exercise of the process was committed to the Board, subject to limited judicial review. *Because the relation of remedy to policy is peculiarly a matter of administrative competence, courts must not enter the allowable area of*

*the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy."* (Emphasis ours.)

Approval of the Board's remedy here does not abdicate our responsibility "for assuring that the Board keeps within reasonable bounds." Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S. Ct. 456, 466, 95 L.Ed. 456 (1951). However, the law is clear that the Board's remedy may be set aside only upon a showing of abuse of its broad discretion in its field of specialization. See NLRB v. J. H. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969); NLRB v. Gissel Packing Co., 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); Hinson v. NLRB, 428 F.2d 133 (March 3, 1970); cf. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (March 2, 1970).

■ We are unwilling to say on this record that the Board's back pay order is totally without reasonable relationship to the company's delay in refusing to bargain over the effects of closing. The company no longer disputes the Board's determination that American and Drapery constitute a single enterprise. It is not totally outside the realm of reasonableness to relate the failure of the company to enter into immediate bargaining over the effects of closing, upon its decision to close, to the possibility that American might well have absorbed the four seamstress employees into their overall operation. Under the circumstances we cannot substitute our judgment as to the proper remedy for that of the Board's.

We grant enforcement of the Board's order requiring respondents to bargain with the union over the *effects* of the closing, and to establish a preferential hiring list in the event Drapery operations are resumed. We grant enforcement of the back pay award. We deny enforcement of the order which requires the companies to bargain over the *decision to close* Drapery.

BLACKMUN, Circuit Judge (concurring).

I concur but I add this comment because I feel that the employer deserves some answer to its argument that the back pay award should be denied enforcement. The employer asserts that the award is speculative and that Ozark Trailers, Inc., 161 NLRB 561 (1966), is governing precedent.

In my view the award is not at all speculative. The backpay period is fixed and precise, namely, from the shutdown date of April 21 to the offer-to-bargain date of August 1. This is less than four months and hardly lends itself to a charge of abhorrent speculativeness. The situation in *Ozark Trailers* is very different for there the back-pay period was open ended and the union was in a position indefinitely to lengthen it by protracted bargaining.

MEHAFFY, Circuit Judge (dissenting in part).

I concur in the majority's denial of enforcement of the Board's order requiring the respondents to bargain over the decision to close Drapery, but I respectfully dissent from that portion of the court's decision granting enforcement of the back pay remedy.

The general counsel conceded that respondents had a lawful right to close the operations of Drapery as it was necessitated solely for economic reasons. Drapery had lost money in increasing amounts and its continuation was hopeless. Thus, there was no unfair labor practice stemming from Drapery's cessation of business.

Assuming arguendo that respondents were obligated to bargaining over the effects of the closing, they offered to do so, although belatedly, but prior to the hearing before the Board. It appears needless and vain to order the respondents to do something which they have

voluntarily agreed to do. Within the framework of the facts in this case, enforcement of the back pay remedy appears to be solely punitive and in no sense effectuates the policies of the Act. The Supreme Court in Republic Steel Corp. v. NLRB, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940), points out that the National Labor Relations Act is essentially remedial and not in any sense punitive. Chief Justice Hughes also said in *Republic, supra* (311 U.S. at 11–12, 61 S.Ct. at 79):

"This language [§ 10(c) of the Act] should be construed in harmony with the spirit and remedial purposes of the Act. We do not think that Congress intended to vest in the Board a virtually unlimited discretion to devise punitive measures, and thus to prescribe penalties or fines which the Board may think would effectuate the policies of the Act. We have said that 'this authority to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices, even though the Board be of the opinion that the policies of the Act might be effectuated by such an order.' We have said that the power to command affirmative action is remedial, not punitive. Consolidated Edison Company v. National Labor Relations Board, 305 U.S. 197, 235, 236, 59 S.Ct. 206, 219, 83 L.Ed. 126. See, also, National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 267, 268, 58 S.Ct. 571, 574, 575, 82 L.Ed. 831, 115 A.L.R. 307. We adhere to that construction."

There is not a great sum involved because the Board's order involved only a few employees for a short period of time, and the amount, if any is due, would not be speculative but certainly punitive in nature and for that reason goes beyond authority of the Board.

For the reasons stated, I would deny enforcement of the back pay remedy.