Harold W. HINSON, d/b/a Hen House Market No. 3, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 19742.

United States Court of Appeals, Eighth Circuit.

March 3, 1970.

Rehearing Denied May 13, 1970.

to bring Tucker Act claims under the FTCA by declaring them to be "torts."

Don M. Jackson, of Jackson & Sherman, Kansas City, Mo., for petitioner.

Seth D. Rosen, Atty., N.L.R.B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, N.L.R.B., Dominick L. Manoli, Assoc. Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B. and Herman M. Levy, Atty., N.L.R.B., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

PER CURIAM.

On February 12, 1968, the Amalgamated Meatcutters & Butcher Workmen of North America, Local No. 576, AFL–CIO (hereafter the Union) filed unfair labor practice charges against petitioner, a long-time retail grocery operator in the Kansas City metropolitan area who had the previous August purchased a self-service food store in Harrisonville, Missouri, renaming it Hen House Market No. 3. The Union represented a unit of three meat department employees in this food store under an existing collective bargaining agreement negotiated between the former owner and the Union. As a successor employer within the meaning of the National Labor Relations Act, petitioner acknowledged the binding effect of this agreement. By virtue of his timely 60-day notice to the Union, however, the agreement terminated on its expiration date of February 3, 1968, instead of automatically renewing, and five days thereafter all three meat department employees, by written request, withdrew from the Union.

A formal complaint and notice of hearing was issued on March 29, 1968, specifically charging petitioner with violations of § 8(a) (1) and (5) of the Act, 29 U.S.C. § 158(a) (1) and (5). After conducting a hearing, the trial examiner issued his decision on September 16, 1968, and concluded:

"Respondent Hinson is in violation of Section 8(a) (1) and (5) of the Act (a) by his refusal to bargain with the Union both before and after the expiration of the binding subsisting collective-bargaining agreement he took over when he purchased the Harrisonville food market, (b) by his promise to the 3 employees in the involved unit of better pay and working conditions if they rejected the Union, (c) by his threats to the employees that they would have to go elsewhere to work if they did not withdraw from the Union, (d) by his unilateral action in increasing the wages of the employees in the unit without notice to or consultation with the Union, and (e) by his unilateral action in changing various subsisting health, welfare and retirement benefits of the involved employees without notice to and consultation with the Union."

The examiner recommended that petitioner be ordered to cease and desist from the specified unfair labor practices, to bargain collectively with the

Union, and to post appropriate notices. Upon exceptions by both petitioner and the Union, the Board reviewed the case and, by order of April 25, 1969, adopted the findings, conclusions and recommended order of the trial examiner with one material exception: Petitioner was additionally required to "[m]ake whole the employees in the appropriate unit by paying all pension, health and welfare contributions, as provided in the expired collective-bargaining agreement, which have not been paid and which would have been paid absent Respondent's unlawful conduct found herein, and continue such payments until such time as Respondent negotiates in good faith with the Union to a new agreement or an impasse."

Hinson filed this petition for review under § 10(f) of the Act, 29 U.S.C. § 160(f), and the Board cross-petitioned for enforcement of its order under § 10(e). Our jurisdiction rests upon § 10(f). We enforce the Board's order in full.

It is unnecessary to set forth the pertinent evidence as found by the examiner, since his opinion has been succinctly summarized at 71 L.R.R.M. 1072 (1969). The Board's order is reported at 175 N. L.R.B. No. 100. As with most labor cases, the principal questions presented for review are essentially factual. The scope of our review, enunciated in the Supreme Court decision of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), is limited to an inquiry whether the Board's order and findings rest upon and are supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e).

We have meticulously examined the entire record in this case and are thoroughly convinced that substantial evidence, and reasonable inferences derived therefrom, support the Board's conclusion that petitioner violated § 8 (a) (1) and (5) of the Act in the particulars charged.

A particularly vigorous assault is made upon the remedy which the Board fashioned in requiring petitioner to pay health, welfare, and retirement benefit contributions from and after the expiration date of the collective bargaining agreement. Inasmuch as the unfair labor practice charges were supported to our satisfaction by substantial evidence on the whole record, the Board must be given broad authority under the Act, 29 U.S.C. § 160(c), to restore the *status quo ante* and to make whole any losses suffered by employees because of the unfair labor practices. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L. Ed. 1271 (1941). It is well settled that "[i]t is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged." International Association of Machinists v. NLRB, 311 U.S. 72, 82, 61 S.Ct. 83, 89, 85 L.Ed. 50 (1940). The fact that the collective bargaining agreement has terminated does not bar the remedy, even though it is geared to the specific terms of that contract. The spirit of the National Labor Relations Act and the more persuasive authorities stand for the proposition that, even after expiration of a collective bargaining contract, an employer is under an obligation to bargain with the Union [1] before he may permissibly make any unilateral change in the terms and conditions of employment.

1. Petitioner asserts that the Union no longer represents the three meat department employees, since they "voluntarily" withdrew on February 8, 1968. But, both the trial examiner and the Board concluded on the basis of what is manifestly substantial evidence that petitioner had induced these withdrawals by promises of economic benefits and other subtle yet coercive practices that amounted to § 8 (a) (1) violations. The law is clear that "[p]etitioner cannot, as justification for its refusal to bargain with the union, set up the defection of union members which it had induced by unfair labor practices, even though the result was that the union no longer had the support of a majority." Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 687, 64 S.Ct. 830, 835, 88 L. Ed. 1007 (1944) ; Colson Corp. v. NLRB, 347 F.2d 128, 134–135 (8th Cir.), cert. denied, 382 U.S. 904, 86 S.Ct. 240, 15 L.Ed.2d 157 (1965).

NLRB v. Cone Mills Corp., 373 F.2d 595, 598–99 (4th Cir. 1967); Industrial Union of Marine & Shipbuilding Workers of America, AFL-CIO v. NLRB, 320 F.2d 615, 619–620 (3d Cir. 1963), cert. denied *sub nom*, Bethlehem Steel Co. v. NLRB, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964). See NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Hence, we conclude that the disputed remedy in this case is appropriate, reasonable, and not ultra vires. See NLRB v. Strong, 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); Overnite Transportation Co. v. NLRB, 372 F.2d 765 (4th Cir.), cert. denied, 389 U.S. 838, 88 S.Ct. 59, 19 L.Ed.2d 101 (1967).

We have carefully considered 29 U.S.C. § 186, relied upon by petitioner in his assault on the remedy, and are convinced that it does not apply to this case.

Order enforced.

## ON PETITION FOR REHEARING

In his petition for rehearing, petitioner makes three assertions, all directed toward a challenge of our enforcement of the Board's remedy requiring petitioner to pay health, welfare, and retirement benefit contributions. We directed the Board to file a responsive brief to the petition. After due consideration, our opinion is modified by striking the last paragraph and the last two sentences of the next to last paragraph (including footnote 1), and inserting in lieu thereof the following:

The spirit of the National Labor Relations Act and the more persuasive authorities stand for the proposition that, even after expiration of a collective bargaining contract, an employer is under an obligation to bargain with the Union [1] before he may permissibly make any unilateral change *in those terms and conditions of employment comprising mandatory bargaining subjects within the meaning of § 8(d) of the Act*. NLRB v. Cone Mills Corp., 373 F.2d 595, 598–599 (4th Cir. 1967); Industrial Union of Marine & Shipbuilding Workers of America, AFL-CIO v. NLRB, 320 F.2d 615, 619–620 (3d Cir. 1963), cert. denied *sub nom*, Bethlehem Steel Co. v. NLRB, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964). See NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Cf. NLRB v. Frontier Homes Corp., 371 F.2d 974 (8th Cir. 1967). It is clear that payments by petitioner into the Union's health, welfare, and retirement benefit funds fall within the ambit of that mandatory classification. See Retail Clerks Union, No. 1550 v. NLRB, 117 U.S.App.D.C. 191, 330 F.2d 210, 215, cert. denied, 379 U.S. 828, 85 S.Ct. 41, 13 L.Ed.2d 31 (1964); W. W. Cross & Co. v. NLRB, 174 F.2d 875, 878 (1st Cir. 1949). Hence, we conclude that the disputed remedy in this case is appropriate, reasonable, and not ultra vires.[2] See NLRB v. Strong, 393

---

1. Petitioner's contention that the Union no longer represents the three meat department employees is lacking in merit. Both the trial examiner and the Board concluded on the basis of what is manifestly substantial evidence that petitioner had induced the three employees to withdraw by promises of economic benefits and other subtle yet coercive practices that amounted to § 8(a) (1) violations. The law is clear that "[p]etitioner cannot, as justification for its refusal to bargain with the union, set up the defection of union members which it had induced by unfair labor practices, even though the result was that the union no longer had the support of a majority." Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 687, 64 S.Ct. 830, 835, 88 L.Ed. 1007 (1944);

Colson Corp. v. NLRB, 347 F.2d 128, 134–135 (8th Cir.), cert. denied 382 U.S. 904, 86 S.Ct. 240, 15 L.Ed.2d 157 (1965).

2. We do not read NLRB v. Frontier Homes Corp., *supra*, as impinging in any way upon the legal support for the Board's remedy in this case. Our recent decision in NLRB v. St. Louis Cordage Mills, 424 F.2d 976 (8th Cir., April 21, 1970), is not applicable. We denied enforcement in that case after concluding that the Company had not committed an § 8(a) (5) violation. Here, we find the refusal-to-bargain charges to be well-founded.

Petitioner claims that the remedy is punitive, in that he will be required to pay health and welfare benefits twice. Following termination of the contract on

U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); Overnite Transportation Co. v. NLRB, 372 F.2d 765 (4th Cir.), cert. denied, 389 U.S. 838, 88 S.Ct. 59, 19 L. Ed.2d 101 (1967).

Petitioner asserts that the recent Supreme Court decision in H. K. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (March 2, 1970), mandates a result contrary to the one we reach. His reliance is misplaced. In *H. K. Porter Co.*, the parties had never arrived at nor agreed to a collective bargaining agreement. The United States Court of Appeals for the District of Columbia Circuit found, and the Supreme Court did not question, that the lengthy bargaining impasse was due solely to the reprehensible intransigence of the Company in adamantly and unreasonably refusing to adopt a Union dues "checkoff" clause in the proposed contract. Relying upon § 8(d) and the general tenor of the Act, the Supreme Court held that the Board exceeded its remedial powers granted under § 10(c) when it specifically directed the Company to agree to and sign a contract containing the checkoff clause. Here, we have an entirely different situation. The parties *had* agreed to a subsisting collective bargaining agreement which included the health, welfare, and retirement benefit provisions. The order does not compel petitioner to agree to any new or different contract provision; it simply requires him to abide by an obligation once extant by reason of the binding contract but then continuing on after its expiration, in limited form, *not by reason of the contract itself but because of the dictates of the policy embodied in the National Labor Relations Act.*

■ We have carefully considered § 302(c) (5) (B) of the Labor-Manage-

ment Act of 1947 [29 U.S.C. § 186(c) (5) (B)], relied upon by petitioner, and are convinced that it in no wise conflicts with the previously stated obligation of an employer *vis-à-vis* his employees' bargaining representative subsequent to expiration of the contract. The statute makes illegal any payment by an employer of money or other thing of value to the representative of his employees, except, *inter alia*, when paid to a trust fund meeting specified requirements, one of which is that "(B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer. * * *" Enacted in 1947, the statute was designed to remedy certain practices considered by Congress to be inimical to the integrity of the collective bargaining process. The concern was "with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." Arroyo v. United States, 359 U.S. 419, 425–426, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959). In order to remove the possibility of these abuses, "specific standards were established to assure that welfare funds would be established only for purposes which Congress considered proper and expended only for the purposes for which they were established." Id. at 426, 79 S.Ct. at 868. See Blassie v. Kroger Co., 345 F.2d 58, 67 (8th Cir. 1965). Relying upon a literal construction of the phrase "written agreement with the employer," petitioner asserts that no written agreement existed after February 3, 1968, when the collective bargaining agreement validly expired; that there can be no continuing duty to make payments to a wel-

---

February 3, 1968, petitioner included the three meat department employees under a benefit plan previously initiated under his own aegis for the benefit of certain employees at his other retail grocery stores. But even if, in the end petitioner will have been obligated to defray duplicate fringe benefits for the three em-

ployees, he is certainly in no position to complain. As observed in Note 1, *supra*, the three employees were induced to withdraw from the Union—and thus to come under, by petitioner's voluntary action, a different benefit program—by petitioner's own unfair labor practices.

fare fund in the absence of a collective bargaining agreement when Congress has specifically prohibited the same and has set forth criminal sanctions in § 302; that he committed no § 8(a) (5) violation in unilaterally terminating welfare payments after contract expiration and would indeed have suffered criminal penalties had he not done so; and that therefore the Board's ordered remedy for petitioner to pay health, welfare, and retirement benefit contributions after February 3 is invalid.

There is a fatal gap in petitioner's chain of reasoning, and it lies in his first link. The reference in § 302(c) (5) (B) to a "written agreement with the employer" does not comprehend solely a collective bargaining agreement to the exclusion of any other possible written agreement. A trust fund agreement separate and apart from the collective bargaining agreement would surely satisfy the statutory prerequisite. See Doyle v. Shortman, 311 F.Supp. 187 (S.D.N.Y., March 3, 1970). Here, Article XX of the expired collective bargaining contract refers to a "Trust Agreement" in existence into which health and welfare benefit contributions were to be made. Article XXIV refers to an agreement of August 7, 1964, which established the "Meat Cutters Local 576 and Employers Kansas and Missouri Pension Plan." Petitioner certainly agreed to these separate trust fund agreements, not only because they are incorporated by reference into the collective bargaining contract itself, but also because he made contributions under each agreement from the date he purchased Hen House Market No. 3 to the date the subsisting collective bargaining contract expired on February 3. We believe that the two separate trust fund agreements in this case satisfy the requirement of § 302(c) (5) (B) for a "written agreement with the employer," even after termination of the collective bargaining agreement on February 3, 1968.

We have previously alluded to petitioner's limited obligation *post* contract expiration to maintain the status quo as to those terms and conditions of employment which are subjects of mandatory bargaining, until and unless he affords the Union an opportunity to bargain. Since the status quo is quite obviously defined by reference to the substantive terms of the expired contract, it follows that, in a limited and special sense, those pertinent contractual terms "survive" the expiration date. See NLRB v. Cone Mills Corp., *supra*. In tandem with this "survival," the separate trust fund agreements have a continuing viability for petitioner as marking the framework under which benefit payments will be administered and disbursed, thereby providing that safeguard which the framers of the statute clearly intended. The termination of February 3 did not negate or remove the status of these separate agreements as "written agreements with the employer." Section 302(c) (5) (B) being satisfied in the first instance, petitioner's challenge to the Board's remedy must fail. Moglia v. Geoghegan, 403 F.2d 110 (2d Cir. 1968), cert. denied, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), on which petitioner places considerable weight, is clearly distinguishable on its facts. In that decision, the Company had never entered into a written collective bargaining agreement "or any other written agreement * * * detailing the basis upon which payments were to be made by [the Company], on behalf of its employees, into the Trust Fund." Id. at 115.

We are still satisfied that the remedy fashioned by the Board achieved an end which can fairly be said to effectuate the policies of the Act. Virginia Electric & Power Co. v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); Phelps-Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); NLRB v. Drapery Manufacturing Co., 425 F.2d 1026 (8th Cir. 1970). Consequently, the Board's order is entitled to enforcement.

The petition for rehearing is denied.