# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3073

_____

| | | |
|---|---|---|
| National Labor Relations Board, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| International Union, United | * | |
| Automobile, Aerospace & | * | Petition for Enforcement |
| Agricultural Implement Workers | * | of an Order of the |
| of America, AFL-CIO-CLC, | * | National Labor Relations Board. |
| | * | |
| Intervenor on Appeal, | * | |
| | * | |
| v. | * | |
| | * | |
| Miller Waste Mills, doing business | * | |
| as RTP Company, Inc., | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 7, 2002

Filed: January 10, 2003

_____

Before HANSEN, Chief Judge, and HEANEY and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

HEANEY, Circuit Judge.

The National Labor Relations Board petitions this court to enforce its order against Miller Waste Mills, Inc. We agree with the Board that the company violated § 8(a)(1) and § 8(a)(5) and (1) of the National Labor Relations Act and enforce the Board's order in these respects. We also hold that the Board did not abuse its discretion in directing the company to recognize and bargain with the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) or in denying Miller Waste's request to reopen the record.

Miller Waste manufactures thermal plastic molding compound at its facility in Winona, Minnesota. In 1984, the employees voted for representation by the Winona Free Union (WFU), an independent labor organization formed by the employees. Thereafter, the WFU and Miller Waste entered into several collective bargaining agreements, with the last agreement set to expire on December 31, 1996. In February 1996, the employees of the bargaining unit voted by secret ballot at a union meeting to affiliate with the UAW. After the company refused to recognize and bargain with the UAW, the Board's general counsel issued a complaint against the company. Thereafter, the Board found that the UAW became the bargaining representative of Miller Waste's production and maintenance employees in February 1996 and ordered the company to recognize and bargain with the union. Miller Waste complied with the Board's order.

In the spring of 1997, the parties exchanged proposals for a new contract at meetings to be held in August of that year. The UAW proposed that Miller Waste grant annual wage increases, improve health insurance benefits, and decrease the employees' cost of health insurance. The company responded by proposing a wage freeze for 1997 and 1998, and expressed a willingness to discuss changes in health insurance benefits as long as the employees paid any increased costs.

In December 1997, Miller Waste notified the UAW that it would not reach a bargaining agreement unless the union could show that a majority of the unit

members currently supported the union. At the same meeting, the parties discussed wages and changes in health insurance benefits. The union told the company that it could proceed with a wage increase without having to worry about an unfair labor practice charge and that it could change health insurance benefits as long as the changes did not offset a wage increase and leave the employees with a net loss in compensation. Shortly thereafter, the union notified Miller Waste that it would not agree to hold a representation election. On January 2, 1998, the company sent a letter to each unit employee decrying the lack of progress in negotiations, asking again for a Board election to determine whether the employees still wanted the UAW to represent them, and stating:

> [T]he [union] stated [on December 11 that] they would allow [the company] to give the employees an increase in pay and to decrease insurance costs but no specifics were discussed. You will recall when [the company] raised wages last year, the UAW filed an unfair labor practice charge against us.
>
> . . . .
>
> We appreciate the need for increased wages and decreased insurance costs, but we cannot handle these things piecemeal. Wages and insurance are only part of the complete economic package, which also includes vacations, holidays, overtime and other issues which we've always dealt with at the same time. We also find it difficult to trust the UAW after they pulled the rug out from under us by denying an election. These and other issues must all be resolved simultaneously.
>
> This is a sad occasion for all of us as this marks the first time in [the company]'s long history we won't be giving you a wage increase at this time. Please understand this is not the way we do business. We are continually exploring ways to ensure that neither our employees nor [the company] are damaged any further by this fiasco.

(J.A. at 173.)

-3-

On January 12, 1998, the UAW sent Miller Waste notice that the union would file a charge if the company did not retract the January 2 letter quoted above and give the employees a wage increase as the company had always done in the past. On January 15, Miller Waste received a petition signed by approximately fifty percent of the employees in the bargaining unit. The petition asked the company to grant employees a fair and decent wage increase and better insurance. In response, Miller Waste directed a letter to "our loyal employees," informing them that the company was going to grant a wage increase of 51¢ an hour (the largest pay increase ever granted by the company), and stating that it hoped and believed it could reduce the cost for health insurance. This letter was followed shortly by another letter from Miller Waste to the employees, this time stating that the company was reducing the employee contribution for health insurance with improved benefits. Miller Waste did not consult with the union prior to implementing these unilateral wage and insurance changes.

On February 4, an employee in the bargaining unit informed the company that 125 employees signed a petition stating they did not want the UAW to represent them. Thereafter, a lawyer for the employees sent Miller Waste a letter dated February 22, stating that the law firm represented a number of company employees who have "advised us that a clear majority" of company employees have signed a petition regarding union affiliation. (J.A. at 183.) Enclosed in the letter was a blind copy of the petition that stated, "We no longer want to be affiliated with the U.A.W., and I do not want the U.A.W. to represent me." (Id. at 184.)

On February 26, at scheduled negotiations between Miller Waste and UAW, the company's chief negotiator showed the union the letter from the employees and a copy of the petition and told the UAW's negotiator that based on this document, Miller Waste was no longer in any position to bargain with the union. On the same day, the company sent a letter to its employees stating that as a result of the letter and the petition, it was no longer going to meet with the UAW. The letter thanked the

employees for supporting the company and stated that the company would "continue to operate as it had over the past months." (Id. at 185.) Thereafter, Miller Waste refused to allow the UAW to participate in the company's grievance process or permit a union officer to take time off for union business.

Soon after Miller Waste stopped negotiating with the UAW, the company announced a change in its attendance program, and informed employees that effective June 1, they could begin using the same health plan as used by the non-unit employees, a change that would result in better benefits and lower employee contributions. On June 1, the company purchased life insurance for unit employees and increased its weekly payment for employees on disability.

In preparation for the hearing on the UAW's unfair labor practice charges, the company issued a subpoena duces tecum to an employee on the union's negotiating committee and who served as the union vice president until January 1998. In response to that subpoena, the employee supplied his notes of the union meeting. These notes identified the employees who attended the meeting and indicated what transpired during the meeting.

On the basis of the above facts, the Board unanimously agreed that from the date the employees voted to affiliate with the UAW, Miller Waste worked to undermine and affect limited bargaining, and engaged in a series of unfair labor practices which culminated in the company's withdrawal of recognition of the UAW. The Board also found that Miller Waste's letters reasonably led the employees to blame the union for their failure to receive the customary annual wage increase. Most importantly, the Board found that Miller Waste engaged in direct dealing with the employees by, without union involvement, granting the largest raise in the company's history and telling the employees that it would improve health care benefits in the near future. Finally, the Board found that there was a causal relationship between Miller Waste's unfair labor practices and the subsequent employee petition claiming

dissatisfaction with the union, upon which the company based its withdrawal of recognition, and that the direct dealing tainted the petition because it undermined the union and indicated to the employees that the company had the employees' best interests at heart. As a result, Miller Waste acted unlawfully by withdrawing recognition of the union based on the petition.

More specifically, the Board found that Miller Waste's January 2, 1998 letter and its pretrial interview of the employee violated § 8(a)(1) of the Act. The Board also found that the company's January 16 and February 13, 1998 letters informing the employees of wage and benefit changes constituted direct dealings with the employees in violation of § 8(a)(5) and (1) of the Act. The Board also found that Miller Waste violated the same sections of the Act by withdrawing recognition of the UAW and thereafter implementing changes in the terms and conditions of employment; refusing to comply with the union's information request; refusing to permit employees to take time off for the union grievance process; and refusing to allow the union to participate in the union grievance process. The Board's order not only requires Miller Waste to cease and desist from the unfair labor practices found, but affirmatively directs the company to recognize the UAW as exclusive representative of the company's production and maintenance employees at the Winona plant and bargain with the UAW upon the union's request, to comply with the union information request, to allow union officials to conduct union business during scheduled work time, to participate in the grievance process, and to post appropriate notices to the employees. The Board also denied the company's request to reopen the record.

**Discussion**

The Board's findings of fact are to be affirmed if supported by substantial evidence on the record. <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 490-91 (1951). In this case, we are in full agreement with the Board's findings. We find

particularly egregious Miller Waste's failure to bargain with the union in good faith after it had been certified to represent the employees. Instead, Miller Waste engaged in a series of unfair labor practices designed to undermine union support, the most important of which was dealing with the employees directly and improving their wages and benefits while completely circumventing the union's authority.

The Board took issue with the following letters from Miller Waste to its employees: (1) the letter of January 2, because it blamed the union for preventing a wage increase; (2) the letter of January 16 granting a wage increase, because it bypassed the union and dealt directly with unit employees; and (3) the letter of February 13 notifying the employees of a reduction in their health insurance costs, because it also bypassed the union and dealt directly with unit employees. The company argues that the letters did not unlawfully blame the union or constitute direct dealings with the employees. The record as a whole, however, indicates that Miller Waste made it quite clear to the employees that it would grant them wage and benefit increases if they bypassed the union. It comes as no surprise that when the employees accepted the company's invitation, they were rewarded for their efforts. Such conduct is a clear violation of the Act, as the Board correctly found.

Further, the Board did not abuse its discretion in directing Miller Waste to bargain with the UAW. Congress expressly delegated to the Board the authority to order appropriate relief for unfair labor practices. Thus, the Board's remedies are reviewed for an abuse of its broad discretion in its field of expertise. NLRB v. Beverly Health & Rehabilitation Servs., Inc., 187 F.3d 769, 772 (8th Cir. 1999); NLRB v. Drapery Mfg. Co., 425 F.2d 1026, 1029 (8th Cir. 1970). Our circuit's decisions are consistent with NLRB v. P. Lorillard Co., 314 U.S. 512, 512-13 (1942), in which the Supreme Court stated:

> The Board found that the respondent . . . had committed an unfair
> labor practice within the meaning of Section 8(5) of the National Labor

Relations Act by refusing to bargain collectively with . . . the duly selected bargaining representative . . . .  On the Board's petition for enforcement the court below sustained the Board's finding, but expressing the belief that because of lapse of time and changed conditions the Local might no longer represent the majority of employees, modified the Board's order so as to require it to conduct an election to determine whether the Local had lost its majority due to a shift of employees to a rival independent association.  The Board had considered the effect of a possible shift in membership, . . . [b]ut it had reached the conclusion that in order to effectuate the policies of the Act, [the company] must remedy the effect of its prior unlawful refusal to bargain by bargaining with the union shown to have had a majority on the date of [the company]'s refusal to bargain.  This was for the Board to determine, and the court below was in error in modifying the Board's order in that respect.

Lastly, the Board did not abuse its discretion when it denied the company's request to reopen the record.  Not only did the company fail to meet the requirements of the Board's rules and regulations that govern the reopening of the record, but the Board found the company failed to promptly submit the new evidence or explain why it had not done so.

We have considered the other issues raised by Miller Waste and find them without merit.  Thus, we enforce the Board's order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.