# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2285

_____

The Finley Hospital

*Petitioner*

v.

National Labor Relations Board

*Respondent*

Service Employees' International Union, Local 199

*Intervenor*

_____

No. 15-2592

_____

The Finley Hospital

*Respondent*

v.

National Labor Relations Board

*Petitioner*

Service Employees' International Union, Local 199

*Intervenor*

BEAM, Circuit Judge.

The Finley Hospital (the Hospital) appeals the National Labor Relation Board's (the Board's) decision affirming an administrative law judge's (ALJ's) finding that the Hospital violated §§ 8(a)(5) and (1) of the National Labor Relations Act (NLRA) by (1) unilaterally discontinuing annual pay raises negotiated in a one-year collective bargaining agreement (CBA) without bargaining with the Service Employees' International Union, Local 199 (the Union) on behalf of the nurses, and (2) by informing the Union it was discontinuing the pay raises. For the reasons discussed below, we reverse.

## I.    BACKGROUND

The Hospital is an acute-care hospital with three facilities in Iowa. The Board certified the Union as the exclusive bargaining representative of full-time and regular part-time nurses. On June 20, 2005, the Hospital entered into a one-year CBA with the Union. Article 20.3 of the CBA states the Hospital's policy regarding pay raises: "Base Rate Increases During Term of Agreement. For the duration of this Agreement, the Hospital will adjust the pay of Nurses on his/her anniversary date. Such pay increases for Nurses not on probation, during the term of this Agreement will be three

-2-

(3) percent." The CBA expired by its own terms one year after the initial effective date. Pursuant to the agreement, the Hospital gave a single raise to each of its nurses on his or her anniversary date during the one-year term.

Negotiations for a new agreement began on March 28, 2006, but a new agreement had not been reached when the CBA expired on June 20, 2006. The Hospital sent a letter to all Union employees stating that it would not provide raises to nurses whose anniversary date fell after the date of contract expiration until the parties reached a new agreement. On June 29, 2006, the Hospital submitted a proposal that would provide a 3% increase in wages. The Union voted to strike on July 6, 7, and 8. The Hospital then told the Union it would not make wage increases in the new CBA retroactive to June 21, 2006. The Union filed a complaint arguing that the Hospital's refusal to give automatic 3% raises after the expiration of the CBA amounted to a refusal to bargain in violation of 29 U.S.C. § 158(a)(5) and (1).[1]

On June 3, 2015, the Board found, in agreement with the ALJ, that the Hospital violated 29 U.S.C. § 158(a)(5) and (1) by declining to give its nurses additional raises after the CBA expired. The Board conceded that the Hospital's contractual obligation

---

[1]The complaint further alleged that the Hospital violated the NLRA by failing to provide the Union with information regarding Unit Operations Councils and nurses' absences due to work-related illnesses, which the Union requested on April 26, 2006. The complaint also noted the Hospital's failure to reasonably accommodate the Union's request for the names and contact information of complainants against Nurse Gina Gross, who was terminated by the Hospital in June 2005. The Board affirmed the ALJ's finding that the Hospital violated §§ 8(a)(5) and (1) of the NLRA by failing to provide the requested information or make a timely accommodation. The Hospital does not appeal these findings, and it failed to discuss these issues in its brief. Thus, "[t]he Board is entitled to summary enforcement of [these] uncontested portions of [the] order." NLRB v. Bolivar-Tees, Inc., 551 F.3d 722, 727 (8th Cir. 2008) (quoting Flying Food Group, Inc. v. NLRB, 471 F.3d 178, 181 (D.C. Cir. 2006)).

to provide annual raises expired at the end of the one-year term. However, because it found that the one-year CBA created a status quo of annual pay raises, it held that the Hospital had a statutory obligation under the NLRA to continue annual pay raises until a new CBA was reached or the parties bargained to an impasse. The Board also found nothing in Article 20.3 of the CBA or in the CBA in general that clearly and unmistakably waived the employer's statutory duty to continue granting annual raises after the expiration of the CBA. Member Harry Johnson dissented.

The Hospital now appeals the Board's decision, arguing that the one-year-long CBA did not establish a status quo of annual, compounded raises after the agreement expired. Alternatively, the Hospital argues that the Union waived its statutory right to post-expiration raises.

## II.    DISCUSSION

### A.    Standard of Review

We review factual findings for substantial evidence. NLRB v. Am. Firestop Solutions, Inc., 673 F.3d 766, 767 (8th Cir. 2012). "'Substantial evidence' is evidence that 'a reasonable mind might accept as adequate to support' a finding." Id. at 768 (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)). We review legal questions to ensure the Board "correctly applied the law." Id. Under this standard, "the NLRB must be sustained if: (1) it started with the currently controlling law; (2) it correctly applied this law; and (3) substantial evidence supports its finding." Cedar Valley Corp. v. NLRB, 977 F.2d 1211, 1215 (8th Cir. 1992). For contractual questions not based on policy under the NLRA, we review the Board's decision de novo. Am. Firestop Solutions, 673 F.3d at 768. Although the Board has authority to interpret CBAs in regards to unfair labor practices, "courts are still the principle sources of contract interpretation." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 202 (1991) [hereinafter Litton Fin.] (quoting NLRB v. Strong, 393 U.S.

357, 360-61 (1969)). If the Board were given authority to interpret contracts, "[w]e would risk the development of conflicting principles." Id. at 203.

## B. Status Quo

The Hospital argues that the Board erred in holding that the one-year-long CBA with the Union established a status quo of annual, compounded raises that, under the NLRA, must be continued after the agreement's expiration. We agree. It is an unfair labor practice under the NLRA for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). The obligation to bargain collectively means that the employer must "meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." Id. § 158(d).

The unilateral change doctrine states that "an employer's unilateral change in conditions of employment under negotiation is . . . a violation of § 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal." NLRB v. Katz, 369 U.S. 736, 743 (1962). Even an *increase* in wages without negotiation constitutes an unfair labor practice. Id. at 746. The only exception is if the pay raises are "in line with the company's long-standing practice of granting" raises, which would then make the practice "a mere continuation of the status quo." Id. Wage increases that fit within this exception are generally "automatic increases to which the employer has already committed himself." Id.

The terms and conditions that continue as part of the status quo under the unilateral change doctrine "are no longer agreed-upon terms; they are terms imposed by law." Litton Fin., 501 U.S. at 206. This is so because "an expired contract has by its own terms released all its parties from their respective contractual obligations." Id. The "rights and duties under the expired agreement[, however,] 'retain legal significance because they define the *status quo*' for purposes of the prohibition on

unilateral changes." Id. (quoting Derrico v. Sheehan Emergency Hosp. 844 F.2d 22, 25-27 (2d Cir. 1988)).

All parties agree that because the CBA had expired, the Hospital no longer had any contractual obligations. As such, "[t]he critical inquiry is whether there existed an established practice or status quo" that created a statutory obligation of compounded, annual raises. NLRB v. Talsol Corp., 155 F.3d 785, 794 (6th Cir. 1998). The Board relied solely on its interpretation of Article 20.3 of the CBA to conclude that continuing 3% pay increases were part of the status quo. However, rather than discussing exactly how the language of Article 20.3 established a status quo of annual pay raises, the Board simply assumed that because the CBA authorized a one-time 3% pay raise, annual 3% raises automatically became part of the status quo that must be maintained during negotiations. As Member Johnson pointed out in his dissent, "[b]y effectively deleting the time constraint that was an inherent part of the wage increase obligation, the majority makes a time-bound obligation into a perpetual one." The Board's decision allows "any incrementalist or decrementalist term [to] control over the *actual language* used in the contract." The purpose of the NLRA was surely not to make all wage terms in every employment agreement last beyond the tenure of the bargained-for agreement.

"We interpret collective-bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." M & G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933 (2015). The Restatement (Second) of Contracts § 202(1) states, "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." "Unless a different intention is manifested, where language has a generally prevailing meaning, it is interpreted in accordance with that meaning." Id. § 202(3)(a). Article 20.3 of the CBA, the raise-providing provision, states that it applies only "for the duration of this Agreement." That phrase, or a slight variation of that phrase, is used three times in

-6-

Article 20.3, and the parties knew that the CBA expired in one year. The generally prevailing meaning of that phrase, in light of all the circumstances, is that each nurse gets one 3% raise on one date during the year that the CBA is in effect. Thus, the plain language of the CBA does not, as the Board states, provide for periodic wage increases or annual raises; rather, the language sets forth a straight forward, singular pay increase on a particular day during the one-year contract.

"Since the status quo is quite obviously defined by reference to the substantive terms of the expired contract, it follows that . . . those pertinent contractual terms 'survive' the expiration date." Hinson v. NLRB, 428 F.2d 133, 139 (8th Cir. 1970). The "substantive terms of the expired contract" in question here, as discussed above, explicitly state that each employee will receive a one-time 3% raise on his or her anniversary date. One cannot separate the one-year term limit from the pay raise obligation. As such, the language of the CBA did not provide for compounded, annual raises. Member Johnson correctly notes in his dissent that the nurses' pay "moved from one fixed point to another and [thus should] stay[] there upon contract expiration." Therefore, the new salary at the time the CBA expired, not the alleged practice of 3% annual pay raises, is the status quo that must be maintained throughout negotiations.

Further, there is minimal, if any, legal precedent supporting the notion that a one-time act by an employer creates a new status quo. In fact, the Fourth Circuit has said the opposite, stating, "[W]e refuse to give any credence to the proposition that a one-time gift . . . , standing alone, could in any way establish a policy or practice of yearly bonuses." S. Md. Hosp. Ctr. v. NLRB, 801 F.2d 666, 669 (4th Cir. 1986). However, "[a]n employer with a past history of a merit increase program neither may discontinue that program . . . nor . . . continue to unilaterally exercise his discretion with respect to such increases." Litton Microwave Cooking Prods. v. NLRB, 949 F.2d 249, 252 (8th Cir. 1991) [hereinafter Litton Microwave] (alterations in original)

(quoting Oneita Knitting Mills, 205 N.L.R.B. 500, 501 n.1 (1973)). "Instead, the employer must maintain the general outline of the program . . . ." Id. at 253.

In Litton Microwave the employer had granted raises every January or February since the opening of the plant in 1977. 949 F.2d at 251, 253. In 1981, the employer decided not to give merit raises. Id. at 252. This court found that under the unilateral change doctrine the employer was required to continue giving raises while negotiating the contract because of the longstanding practice of giving such raises. Id. at 253. "[T]he February merit increases were a part of wages because they had become a practice of the company . . . ." Id. at 252. Thus, failure to bargain over discontinuation of the raises constituted an unfair labor practice in violation of the NLRA. Id. at 253. Conversely, in Phelps Dodge Mining Co. v. NLRB, 22 F.3d 1493 (10th Cir. 1994), the court held that eight bonuses paid to various employees between 1985 and 1989 did not establish a status quo of bonuses. Id. at 1497. Bonuses or pay raises "are considered 'wages' or 'other terms and conditions of employment' 'if they are of such a fixed nature and have been paid over a sufficient length of time to have become a reasonable expectation of the employees and, therefore, part of their anticipated remuneration.'" Id. at 1496 (quoting NLRB v. Nello Pistoresi & Son, Inc., 500 F.2d 399, 400 (9th Cir. 1974)). The Board examined the "regularity of the practice and the way in which the employer . . . treated it." Id. (quoting Guy Gannett Publ'g Co., 295 N.L.R.B. 376, 378 (1989)). Even with multiple bonuses paid on a semi-consistent basis over several years, it was not enough to establish a new status quo, and thus, failure to negotiate discontinuation of the bonuses was not an unfair labor practice. Id. at 1498.

Here, the Board's finding of a status quo of annual raises was based on a singular pay raise delineated in a CBA that contained an explicit term limit. Although courts have struggled with deciding exactly how long is long enough to establish a new status quo, a one-time pay increase is clearly insufficient. The one-year-long CBA did not establish "a past history" of annual 3% raises. Litton Microwave, 949

F.2d at 252. Thus, the Hospital "maintain[ed] the general outline of the program" by preserving employees' salaries through negotiation as they were at the expiration of the CBA. Id. at 253.

## III. CONCLUSION

Because we hold that the CBA did not establish a status quo of, and thus a statutory right to, annual 3% raises, we need not address whether the Union waived its alleged statutory right to post-expiration raises. And, because the Hospital did not violate 29 U.S.C. § 158(a)(5) by discontinuing annual pay raises, the Hospital also did not violate 29 U.S.C. § 158(a)(1) by informing employees that it would no longer give annual pay raises after the expiration of the CBA.[2] We grant the Hospital's petition for review and set aside the portion of the Board's order regarding the Hospital's discontinuance of annual pay raises. The uncontested portions of the Board's order are affirmed.

MURPHY, Circuit Judge, dissenting.

Because the majority has not applied the governing law to this case, I dissent. Under the NLRA employers are prohibited from refusing "to bargain collectively

---

[2]The dissent misconstrues the court's analysis, suggesting that we "confuse[] the union's prima facie case with the Hospital's affirmative defense of waiver." As the dissent correctly states, we should have, and we did, first "determine[] the sufficiency of the union's prima facie case," holding that the one-year-long CBA failed to establish a status quo of annual 3% raises. Since, as noted in Hinson, 428 F.2d at 139, the Union's applicable status quo is measured by "the terms of the expired contract," the plain language of the CBA established a new "status quo" salary, not a status quo of annual 3% raises. Thus, given the holding that the Union had no right, contractual or statutory, to annual 3% raises, it was not necessary for the court to reach the Hospital's defense that the Union waived any right emerging from the CBA.

with" the employees' representatives, 29 U.S.C. § 158(a)(5), and must maintain the "status quo" after a CBA expires until either a new agreement or an impasse is reached. NLRB v. Katz, 369 U.S. 736, 746–47 (1962). In order to show that an employer has violated the NLRA by a unilateral change in the status quo, a union must prove that the employer changed a term or condition of employment that is a mandatory subject of bargaining under the CBA. See Am. Oil Co. v. NLRB, 602 F.2d 184, 188 (8th Cir. 1979); Hinson v. NLRB, 428 F.2d 133, 139 (8th Cir. 1970). An employer may nevertheless unilaterally change such a term if a union has waived its statutory right to bargain about that provision. Id. at 133. Waiver is an affirmative defense an employer must prove by "clear and unmistakable" evidence. Porta-King Bldg. Sys., Div. of Jay Henges Enters., Inc. v. NLRB, 14 F.3d 1258, 1262–63 (8th Cir. 1994).

The majority's analysis confuses the union's prima facie case with the hospital's affirmative defense of waiver. In its opinion the majority concludes that the union failed to prove that the hospital unilaterally changed the status quo since the nurse pay raise provision was limited to the "duration of" the CBA. A union's prima facie case is however to be analyzed separately from an employer's waiver defense. See Porta-King, 14 F.3d at 1262–63; see also Local Joint Exec. Bd. of Las Vegas v. NLRB, 540 F.3d 1072, 1078–80 (9th Cir. 2008); Honeywell Int'l, Inc. v. NLRB, 253 F.3d 125, 128–34 (D.C. Cir. 2001); NLRB v. Gen. Tire & Rubber Co., 795 F.2d 585, 588 (6th Cir. 1986).

Here, the union proved its prima facie case since the nurse pay raise provision was a mandatory subject of bargaining, 29 U.S.C. § 158(d), and an express term of the CBA, see Hinson, 428 F.2d at 139. The pay raise provision defined the status quo despite the clauses limiting it to the "duration of" the CBA because the agreement's expiration was extended by law until the parties reached an impasse or a new agreement. See Local Joint Exec. Bd., 540 F.3d at 1078–80; Honeywell Int'l, 253 F.3d at 128–34; Gen. Tire & Rubber Co., 795 F.2d at 588. Since the hospital failed

-10-

to pay nurse raises after the expiration of the CBA, but before an impasse or a new agreement, the union proved its prima facie case. The duration clauses in the pay raise provision are only relevant to the hospital's affirmative defense of waiver.

A union relinquishes its right to bargain for a term of employment if it has agreed to "waive its statutory protection against unilateral changes in mandatory subjects of bargaining." Honeywell Int'l, Inc., 253 F.3d at 133; see also Am. Oil Co., 602 F.2d at 188. In order for a party to waive its statutory right to bargain over a CBA provision, the CBA must explicitly state that the provision *terminates* at the expiration of the CBA. See, e.g., Local Joint Exec. Bd., 540 F.3d at 1080; Honeywell Int'l, 253 F.3d at 133–34. It is not enough for the provision to state that it lasts for the *duration* of the agreement. See, e.g., Local Joint Exec. Bd., 540 F.3d at 1080; Honeywell Int'l, 253 F.3d at 133–34. That is because the unilateral change doctrine "presupposes the end of a collective bargaining agreement and guarantees the continuation of existing benefits *as a matter of law*." Honeywell Int'l, 253 F.3d at 128. Thus, if a CBA provision contains a duration clause that merely defines when the union's "*contractual* right[s]" end but "is silent on [when] the Union's *statutory* rights" end, it "in no way evinces a clear and unmistakable waiver." Id. at 134.

Here, the union did not waive its statutory right to pay increases after the expiration of the CBA. The nurse raise provision at issue states:

> 20.3 Base Rate Increases <u>During Term of Agreement</u>. <u>For the duration of this Agreement</u>, the Hospital will adjust the pay of Nurses on his/her anniversary date. Such pay increases for Nurses not on probation, <u>during the term of this Agreement</u> will be three (3) percent. . . .

(emphasis added). Although the provision states that the pay increases will last for the duration of the contract, it does not provide that the increases will "terminate" when the agreement expires. Because the duration clauses are "silent on the Union's

*statutory* rights under <u>Katz</u> and <u>Litton</u>," they "in no way evince[] a clear and unmistakable waiver by the union." <u>See</u> <u>Honeywell Int'l, Inc.</u>, 253 F.3d at 430.

The duration clauses at issue in this case are similar to the one in <u>Local Joint Executive Board of Las Vegas</u>, where a dues checkoff provision in the CBA stated that it "shall be continued in effect for the term of [the] Agreement." 540 F.3d at 1075. The Ninth Circuit explained that this duration clause did not waive the union's statutory right to bargain over the provision because:

> The Board's precedent has plainly and consistently distinguished between language that states a particular provision applies "during" the contract term, and language that states the relevant benefit will "terminate" at the end of the contract term. Only where the provision states that the benefit will "terminate" has the Board found a clear and unmistakable waiver.

<u>Id.</u> at 1080.

The decision in <u>Local Joint Executive Board of Las Vegas</u> is supported by several other circuit court and Board decisions. <u>See, e.g.</u>, <u>Honeywell Int'l, Inc.</u>, 253 F.3d at 130, 133–34 (concluding that the following duration clause did not waive the union's rights: "The Effects Bargaining Agreement shall be effective as of May 30, 1994, and shall remain in effect until midnight on June 6, 1997, but not thereafter unless renewed or extended in writing by the parties"); <u>Gen. Tire & Rubber Co.</u>, 795 F.2d at 587–88 (concluding that the following duration clause did not waive the union's rights: "the benefits described herein shall be provided for ninety (90) days following termination"); <u>Schmidt-Tiago Const. Co.</u>, 286 N.L.R.B. 342, 343 n.7 (1987) (concluding that the CBA's requirement that employer contributions to the employees' pension could only be made "in accordance with a Pension Agreement" did not waive the union's rights); <u>KBMS, Inc.</u>, 278 N.L.R.B. 826, 849 (1986) (concluding that the CBA requirement that employer contributions to employee trust

funds "shall continue to be paid as long as [the company] is so obligated pursuant to said collective bargaining agreements" did not waive the union's rights).

Since the hospital violated the NLRA by not paying nurse raises while CBA negotiations were ongoing and the union did not waive its right to bargain over this provision, the hospital's petition for review should be denied.

_____